Bank v. School District.

Nos. 21,128-21,130.
(Consolidated.)

No. 21,128.

THE HOME STATE BANK, *Appellee*, V. SCHOOL DISTRICT NO. 17
IN WYANDOTTE COUNTY, *Appellant*.

No. 21,129.

THE MINNESOTA AVENUE STATE BANK, *Appellee*, V. SCHOOL
DISTRICT NO. 17 IN WYANDOTTE COUNTY, *Appellant*.

No. 21,130.

THE COMMERCIAL NATIONAL BANK, *Appellee*, V. SCHOOL DIS-
TRICT NO. 17 IN WYANDOTTE COUNTY, *Appellant*.

SYLLABUS BY THE COURT.

1. REFERENCE—*Findings of Referee Confirmed—Findings of Fact Con-
clusive.* Where a defendant files a motion asking the court to ap-
prove and confirm the findings of fact made by a referee, and to set
aside the referee's conclusions of law, and the court confirms and ap-
proves both the findings of fact and conclusions of law, the defendant
cannot question the correctness of the findings of fact.

2. SCHOOL WARRANTS—*Drawn on Empty Treasury—Warrants Became
Floating Debt.* The fact that at the time a school warrant is issued
there are no funds in the hands of the treasurer with which to pay
it, does not render the warrant illegal or void. When the warrant
is presented for payment, it becomes the duty of the treasurer to in-
dorse it "Not paid for want of funds," and it then becomes a floating
debt of the district.

3. SAME—*Action on Warrants—Pleadings—Departure.* Where the an-
swer of a school district to an action upon school warrants pleads that
the warrants were unlawfully issued and are without consideration
and void, a reply which alleges that the defendant received and used
the property and services for which the warrants were issued, that the
acts of its officers in issuing the warrants were ratified by the electors
of the district, and that defendant is estopped to question the validity
of the warrants, does not set up a new cause of action nor constitute a
departure.

4. SAME—*Assignment—Rights of Assignee.* By the assignment of a
school warrant the assignee becomes the owner of whatever claim
the original holder had against the district for the indebtedness evi-
denced by the warrant.

5. SAME—*Amount of Judgment.* In an action on a school warrant which
has been issued for a sum in excess of the amount due the creditor,
but which is otherwise legally issued, the court may properly give
judgment for the amount actually due on the indebtedness evidenced
by the warrant.

Appeal from Wyandotte district court, division No. 2; FRANK D. HUTCHINGS, judge. Opinion filed December 8, 1917. Affirmed.

*Justus N. Baird,* of Kansas City, for the appellant.

*L. W. Keplinger, C. W. Trickett, E. A. Enright, E. S. Mc-Anany, M. L. Alden,* and *Thomas M. Van Cleave,* all of Kansas City, for the appellees, *Samuel Maher,* of Kansas City, of counsel.

The opinion of the court was delivered by

PORTER, J.: These cases involve the same questions and were consolidated and submitted together. Each of the banks brought suit against the school district on school warrants and recovered judgment, from which the school district appeals.

The petitions alleged that the school district issued its warrants, setting out copies of the warrants, their assignment to the bank, and asked judgment for the amounts due. In addition to a general denial the answer alleged that at the time the warrants were signed, T. E. Moody was not a duly elected and qualified director and officer, and was not a *bona fide* resident of the school district; that James H. Ewing, at the time the warrants were signed, had no right to act as treasurer; that the warrants, which were drawn by Stephen Lockridge as clerk, were for sums in excess of the moneys in the hands of the alleged treasurer, or which had been apportioned to or raised by the district for the payment of warrants; that the warrants were without consideration, illegal, and void.

The reply contained a general denial and alleged that if any warrant sued on was invalid for any cause when issued, the property and service for which it was issued were received and used by the defendant, and thereby the defendant ratified and validated such warrant and became liable for its payment; that the acts of the officers and agents in issuing the warrants were ratified by the electors of the school district at subsequent regular school meetings; that the defendant appropriated the services and used the property received without objection; and that the electors of the district met in annual and special meetings each year with full knowledge that the warrants had been issued and of all the facts pertaining thereto.

The first complaint is the overruling of a motion to strike from the reply all averments tending to show that the district was liable because it had qualified or ratified the issuance of the warrants; the theory of the defendant being that these allegations of the reply constitute a departure, and further that plaintiff was thereby seeking to recover upon a *quantum meruit,* which was barred by the statute of limitations.   There was no departure in the pleadings.   The actions were brought upon school warrants; the answer challenged their validity; the reply merely sought to avoid this portion of defendant's answer by alleging that the school district received the benefit of the work and labor and the indebtedness represented by the warrants and was therefore estopped to plead the invalidity of the warrants.   No new cause of action was pleaded by the reply.   (*Hunter v. Allen,* 74 Kan. 679, 88 Pac. 252, and authorities cited in the opinion; *Snyder v. Wheeler,* 81 Kan. 508, 106 Pac. 462; *Sturgeon v. Culver,* 87 Kan. 404, 407, 124 Pac. 419.)   The warrants are not negotiable instruments, and their assignment to the bank by the original payee transferred to the bank whatever claim the original owner had against the district for the indebtedness evidenced by them.   (*School District v. Dudley,* 28 Kan. 160.)

The trial court sent the case to a referee, who filed an exhaustive report finding, among other things, that from January 1, 1908, to the 12th of January, 1911, James H. Ewing occupied the office of and acted as treasurer of the school district; T. E. Moody occupied the office of director, and Stephen Lockridge occupied the office of clerk of the defendant. These were the members of what is known as the old board which issued the warrants sued on.   The findings show that about August 1, 1911, S. C. Hogg suceeded Ewing as treasurer, Frank C. Brown succeeded Moody as director, and John W. Carter succeeded Stephen Lockridge as clerk.   These constitute what is known as the "new board."   The referee finds that there was dissatisfaction with the acts of the officers of the old board as early as the school meeting in April, 1910, and that there were two factions in the district, resulting in a grand jury investigation.

As to the warrants sued on, the referee finds that they were all regularly ordered, executed and issued by action of the

officers of the district as a board. It also appears that in 1908 the district, at a meeting regularly called, ordered the érection of a new school building, but the amount to be expended was not limited or specified. The building was erected in 1908 and occupied for school purposes in September of that year. At that time the school site consisted of about one-half acre, the law requiring not less than one acre. In 1909 the school board, under authority from the district given at the annual meeting, contracted for the purchase of four lots adjoining the original site and these lots were openly used as part of the school site until late in the summer of 1912, when the new board, by consent of the vendor of the lots, canceled the contract, issuing two warrants in payment for a release, one of these having been paid by the district, the other being one of the warrants sued on.

It appears from the findings that there were but two families of the Caucasian race living in the district and that all of the district officers were of the African race; that the schoolhouse was used as a community center, open at all times, not only for school purposes, but for lodge meetings, church and social affairs, band practice, and was frequently resorted to by loafers and persons who destroyed and damaged the property; that the doors and windows were often knocked out and the furnace was partly wrecked; that most of the construction of the building and improvements was done by day work, the laborers with few exceptions being residents of the district.

The findings recite in detail the purposes for which the various warrants were issued, the annual meetings of the district at which the number of outstanding warrants were reported. It appears that all the claims, vouchers, books of record and documents belonging to the district were turned over to the prosecuting officers for use before the grand jury in 1911 and have either been lost or destroyed. The referee finds that in some instances warrants were drawn for illegitimate purposes and certain others were drawn in excess of any sum received by the district in return, and finds that not to exceed 50 per cent should be allowed on certain of these warrants. There is a finding that after certain bonds, issued for the purpose of paying for the building, had been found insufficient, the board began to issue warrants stamping them "Not

paid for want of funds," and that this led to a loss of credit and depreciation in the value of the warrants of the district, and creditors refused to accept them at par. In many instances, to overcome the difficulty, warrants were drawn for such sum as when discounted at the banks would net the amount of the indebtedness, and in some cases where laborers and material men would not accept warrants, a warrant would be drawn to a single individual for such sum as when discounted at the bank would yield the net amount necessary to discharge the claims; that in one instance a warrant was drawn in favor of the treasurer of the district in order to pay a bill for lumber used in the construction of the building; in other instances a warrant to cover the payroll for a number of laborers and mechanics was drawn payable to the foreman in charge of the work.

As conclusions of law the referee found that at the time of the issuance of the warrants sued on, Ewing, Moody and Lockridge were officers *de facto*, if not *de jure*, of the district, except as to one warrant, which was issued by the new board.

The defendant filed a motion to confirm the referee's report as to findings of fact and to overrule the conclusions of law. The court granted part of the motion and overruled the rest. It confirmed the report of the referee as to findings of fact and approved the conclusions of law reached by the referee, and rendered judgment for the plaintiffs. It is, of course, too late now for the defendant to claim that the trial court erred in confirming the report as to the findings of fact. The principal contention of the defendant is that the tax levy made by the district for the years 1909, 1910, and 1911 was in excess of the levy authorized by law for school purposes, and that it necessarily follows that the warrants are void. None of the evidence in the case has been brought to this court, and the findings of fact do not sustain the contention that the tax levy was in excess of that authorized by law for school purposes. Besides, it does not necessarily follow that a warrant is void because when it is drawn there is no money in the hands of the treasurer to pay it. It is true, as defendant asserts, that the statute (Gen. Stat. 1915, § 8956) makes it the duty of the clerk of the district to draw orders on the treasurer for moneys in the hands of the treasurer, but section 8929 of the General Statutes of

1915 recognizes that school districts frequently have "a floating indebtedness consisting of outstanding school orders." Section 11699 of the General Statutes of 1915, which relates to all warrants or orders drawn on public treasurers, provides that

"in case there is not sufficient money in the hands of such treasurer to pay any warrant when presented, he shall indorse thereon a proper registered number, in the regular order of its presentation, and the words, 'Presented and not paid for want of funds,'"

and the same section provides that no warrants shall be received for taxes by any county treasurer unless he shall have in cash a sufficient sum to redeem all warrants having such priority over the warrants so offered for taxes. Other provisions of the statute authorize the funding of outstanding or floating indebtedness of school districts and recognize that warrants are very frequently drawn when there is no money in the treasury to pay them. The warrant is *prima facie* valid, notwithstanding the fact that at the time it is drawn there is no money in the hands of the treasurer to pay it. Among the powers given to school districts at their annual school meeting is the power to vote a sum annually, not exceeding the limit fixed by law, as the meeting shall deem sufficient, for various school purposes *and for the payment of any floating indebtedness of the district.* (Gen. Stat. 1915, § 8913.) The provision that the clerk of the district shall draw orders on the treasury for the money in the hands of such treasurer is a general provision, and of course does not limit the power of the officers to make contracts binding upon the district, or to audit accounts against the district and to issue to a creditor a warrant as evidence of the amount due him. The findings of the referee, approved by the court, are that the school district received the consideration for the warrants included in the judgments, and not only this, but that the district at the various meetings ratified the action of the officers in issuing the warrants. (*School District v. Swayze,* 29 Kan. 211, 218.)

The judgments are affirmed.