# FARMERS SAVINGS BANK OF WEST PLAINS, MISSOURI, Appellant, v. AMERICAN TRUST COMPANY OF WARRENSBURG, MISSOURI, Respondent.

### Kansas City Court of Appeals, May 20, 1918.

1. **BANKS AND BANKING:** ''Kiting Checks:'' Acceptances. The stamping of checks by a bank, upon which the checks were drawn, as "paid" does not have the effect of an acceptance of an inland bill of exchange, which is irrevocable, where the bank's conduct is induced by fraud. A bank which assumes to pay a check drawn upon it, may countermand its action, where its conduct is induced by fraud and where the rights of third parties have not intervened.

2. ———: ———: ———: Where there is a "kiting" operation being conducted by a depositor in each of two banks, there is no presumption in the absence of evidence that one bank knows the condition of a depositor's account in the other bank but such evidence may be established by inference. So where for seven months a "kiting" operation has been in existence and over $600,000 in checks have passed between two country banks and where the defendant bank claimed to be innocent of knowledge of the "kite" but knew that its depositor had no property and was judgment proof and it received blank checks signed by the depositor of the other bank to take care of any checks coming in signed by its depositor and its depositor had no funds with it except the worthless checks of the depositor in the other bank, there was evidence for the jury on the question of defendant bank's knowledge of the fraudulent "kiting" of checks.

3. **NEGOTIABLE INSTRUMENTS:** Bills and Notes: Checks. The action of a bank in holding the checks for more than twenty-four hours without returning them, does not constitute an acceptance of them and make the bank liable for the amount of the checks (section 10107, R. S. 1909) where it is shown that the bank called up the other bank which issued the checks and notifield it that it would not pay them and that no demand had been made for their return.

Appeal from Pettis Circuit Court.—*Hon. H. B. Shain,* Judge.

REVERSED AND REMANDED.

*H. D. Green, Wm. Green, M. E. Morrow* and *George W. Barnett* for appellant.

*Nick M. Bradley* for respondent.

BLAND, J.—This is a suit on two checks drawn by one Burton on the defendant in favor of one Workman. The verdict and judgment was in favor of the defendant and plaintiff has appealed. The facts show that from January, 1915, to August, 1915, Burton and Workman were engaged in the cattle business at West Plains, Missouri; that Workman was a depositor of the plaintiff, or the West Plains bank, and Burton a depositor of the defendant, or the Warrensburg bank; and that during that time what was described in the evidence as a "kite" was going on between Burton and Workman. For convenience plaintiff will be referred to as the West Plains bank and defendant as the Warrensburg bank.

The evidence shows that the West Plains bank had a correspondent in the city of St. Louis through which it made out of town collections and that the Warrensburg bank had a correspondent in Kansas City through which its out of town collections were made. The evidence shows that the "kiting" was carried on as follows: Workman and Burton desiring to obtain a credit in favor of the former in the West Plains bank, the latter would draw a check or checks on the Warrensburg bank in favor of Workman who would deposit it or them to his credit in the West Plains bank. It would take three or four days after the check was drawn for it to reach the Warrensburg bank for payment and in the meantime, in order to show a credit in the Warrensburg bank in favor of Burton sufficient to take care of Workman's check, Workman would draw a check or checks in favor of Burton on the West Plains bank. These latter checks would be deposited in the Warrensburg bank before Burton's check reached it. As before stated, this system of "kiting" had been in progress from January, 1915, to August, 1915, and during this time something like six hun-

dred thousand ($600,000) dollars in checks had passed between the two banks.

It was the understanding between Burton and the Warrensburg bank that the former should not be permitted to overdraw his account, so Burton would give the Warrensburg bank checks on the West Plains bank signed by Workman with the amount left blank so that the Warrensburg bank might fill in the necessary amount to cover any of Burton's checks that came in. The secretary of the Warrensburg bank testified that he knew nothing of the financial standing of Workman but he knew that Burton, who was a resident of Warrensburg, had no property which could be reached by execution; that he had done business with Burton once before and that he had no capital then. Neither Burton nor Workman had any money in either of these banks except these "kited" or fraudulent checks.

During the latter part of July, on account of the enormous number of checks coming through the West Plains bank, its president began to suspect that there was a "kite" in existence between Burton and Workman. On August 1, the bank examiner came into the West Plains bank and told its president that there was a "kite" going on. On August 5th, Workman deposited the two checks sued upon in the West Plains bank, which were drawn on the Warrensburg bank and were signed by Burton; one in the sum of twenty-seven hundred, forty-eight and 50-100 ($2748.50) dollars and the other in the sum of forty-five hundred ($4500) dollars. The evidence is conflicting as to whether these checks were taken by the West Plains bank for collection or as a deposit to Workman's account. The West Plains bank, following its usual course, sent these checks to its St. Louis correspondent who in turn, on August 7th, forwarded the same to the Warrensburg bank. The checks were received by the president of the latter early on the morning of August 9, 1915. Upon receipt of these checks the president of the Warrensburg bank examined Burton's account and found that, on account of various checks of Workman that Burton had deposited and which were on

their way to the West Plains bank for payment, Burton had an apparent credit sufficient to meet the amount of these checks, and the president of the Warrensburg bank marked these two checks "paid" and drew a draft for their amount upon its correspondent in Kansas City. Shortly thereafter the correspondent in St. Louis of the West Plains bank, at the request of the latter, called up the Warrensburg bank over the long distance telephone and asked it if these two checks had been paid and its president replied that they had. Within an hour or two thereafter, a bank examiner came into the Warrensburg bank and informed its president that he had been sent there to investigate a "kite" that had been going on between Burton and Workman. The president and secretary of the Warrensburg bank testified that this was the first they knew of any "kite" existing between said parties. After the president of the Warrensburg bank had talked to the bank examiner the former called up the West Plains bank and asked if it did not have some checks on the Warrensburg bank "that had been sent in transit" (meaning checks drawn by Workman in favor of Burton on the West Plains bank and deposited in the Warrensburg bank, upon which the apparent credit described in the Warrensburg bank was based.) The West Plains bank replied that it had the checks and would refuse to pay them, and the president of the Warrensburg bank then stated to the West Plains bank that it would refuse to pay the two checks involved in this suit and would notify the correspondent in St. Louis of the West Plains bank to this effect, which was done by long distance telephone. The correspondent of the West Plains bank was also notified that payment would be stopped upon the draft drawn on the Kansas City correspondent of the Warrensburg bank, which was done, and the word "paid" was erased from the two checks mentioned.

Plaintiff's first point is that the court should have given its instruction in the nature of a peremptory instruction to find for plaintiff. In this connection plaintiff urges that the Warrensburg bank's acceptance of the two checks sued on was equivalent to a certification of

the checks and amounted to the same as an acceptance of an inland bill of exchange, and it became unconditionally bound to pay said checks and that such acceptance was irrevocable. This contention is not well taken, for the reason that where a bank is induced by fraud to certify the check of a depositor for an amount in excess of his deposit it may countermand payment unless the rights of other parties have intervened (5 R. C. L. 526), and, of course, the same rule obtains where the bank has assumed to pay a check that it does not certify and is in a position to countermand its action, as in this case.

The defense of fraud was tried on the theory that if the Warrensburg bank had no funds belonging to Burton in its bank with which to pay the checks in question other than the worthless checks of Workman, and that the West Plains bank knew that said worthless checks were held by the Warrensburg bank and knew that the Warrensburg bank relied upon said checks being good, and knew that Burton had no other funds except the worthless Workman checks in the Warrensburg bank with which to meet the checks, and that the Warrensburg bank did not know of the fraudulent "kiting" at the time it marked "paid" the two checks in suit, and that the West Plains bank induced the Warrensburg bank to accept and pay the checks by its fraudulent conduct, then plaintiff was not entitled to recover.

Defendant insists that there is no evidence that the West Plains bank knew the condition of Burton's account in the Warrensburg bank; that for all the West Plains bank might have known, the Warrensburg bank had funds, in addition to the Workman checks, to satisfy the two checks in suit. There is no direct evidence that the West Plains bank knew that the Warrensburg bank had no funds of Burton except the fraudulent Workman checks, but from the evidence such knowledge may be inferred. The evidence shows that the West Plains bank knew that there was a "kite" going on when it took the two checks in suit; it knew that this had been going on for some time and knew that more than six hundred thousand dollars ($600,000) in checks had been drawn. If Burton

had funds in the Warrensburg bank sufficient to cover the checks issued by him, other than the worthless checks of Workman, why was it necessary that a "kite" be conducted? We think the jury could say that as the West Plains bank knew there had been a "kite" in existence for some time it also knew that the Warrensburg bank had no funds of Burton other than the worthless checks of Workman.

Plaintiff urges that the court erred in refusing to give its instruction No. 2, which told the jury that if the Warrensburg bank in receiving the two checks in controversy held the same for more than twenty-four hours without the consent of plaintiff, without returning the same, its conduct constituted an acceptance and made it liable for the amount of the checks, and the verdict should be for the plaintiff. The court gave this instruction in a modified form by adding, "unless you find and believe from the preponderance of the evidence that the defendant is entitled to recover on the issue of fraud as defined in other instructions." It is plaintiff's contention that section 10107, Revised Statutes 1909, providing that if a drawee, to whom a bill is delivered for acceptance, refuses within twenty-four hours after delivery to return the bill accepted or not accepted to the holder, he will be deemed to have accepted the same, now applies to checks. [See section 10155( R. S. 1909.] Assuming that section 10107 does apply to checks, nevertheless, we think the court did not commit error in reference to this matter. The president of the Warrensburg bank called up the West Plains bank and notified the latter that it had refused to pay the checks. Plaintiff's correspondent at St. Louis was also notified. There was no demand made by the West Plains bank or anyone for it for the return of the checks and none of the parties could have been misled by the action of the Warrensburg bank in not returning them within twenty-four hours. It is doubtful if this statute applies at all in fraud cases such as this one.

Plaintiff contends that the court erred in refusing to give its instruction No. 6. This instruction told the

jury that the West Plains bank was not presumed, in the absence of knowledge to the contrary, to know the condition of Burton's account in the Warrensburg bank, and that the West Plains bank had a right to rely upon the presumption that defendant did know the condition of such account unless they believed from the greater weight of the evidence that the West Plains bank as a matter of fact did know of the condition of Burton's account in defendant bank. The court gave this instruction in substantially the same form in another instruction given on its own motion which applied the rule stated in said refused instruction to both banks. Therefore, we think that the court did not err in refusing plaintiff's instruction No. 6 and in giving an instruction of its own on this question.

Plaintiff urges that the court erred in giving instruction Nos. 9 and 10 on behalf of the defendant and in refusing to give instruction No. 4 asked by plaintiff. Instructions Nos. 9 an 10 permitted the jury to find for the defendant without finding that the Warrensburg bank an ignorant of the "kite" and relied upon the failure of the West Plains bank to impart the knowledge that a "kite" was in existence. Plaintiff's instruction No. 4 required the jury before it could return a verdict for defendant to find that the West Plains bank by fraud induced the Warrensburg bank to pay the checks and at the time knew that the Warrensburg bank had not sufficient funds on deposit to Burton's credit, other than the worthless checks of Workman, to pay the checks forwarded, and that the West Plains bank through its officers knew that the Warrensburg bank was deceived by such worthless checks and believed them to be good.

Defendant contends that there is no evidence in the record that the Warrensburg bank knew that there was a "kite" in existence and that therefore it did rely upon the failure of the West Plains bank to disclose all the facts. We think there is some evidence to go to the jury upon this point. The Warrensburg bank knew that Burton had no property and was judgment proof. For seven

months he had been carrying on a large business with the Warrensburg bank and the only funds that he had on deposit there at the time of these transactions were the checks of Workman. As already stated, the transactions between these two banks amounted to more than six hundred thousand ($600,000) dollars. The Warrensburg bank had on understanding with Burton that his accounts should not be overdrawn and Burton gave to the Warrensburg bank Workman's checks drawn on the West Plains Bank with the amounts left blank to be filled in by the Warrensburg bank in order to take care of Burton's checks drawn in favor of Workman. Under these circumstances it is difficult to understand why the Warrensburg bank did not at least become suspicious of these transactions and make some investigation to find out whether they were bona fide. In business transactions parties must not neglect to use their own judgment and discretion. [London v. Green, 49 Mo. 363; Hines v. Royce, 127 Mo. App. l. c. 723.] The court erred in ignoring this issue. [Younger v. Hoge, 211 Mo. 444; Martin v. Hill, 125 Mo. App. 375; Funding and Foundry Co. v. Heskett, 125 Mo. App. 516; Hines v. Royce, supra.]

The judgment is reversed and the cause remanded. All concur.