[No. 14572.   Department One.   October 8, 1918.]

R. P. WOODWORTH, *Appellant,* v. SCHOOL DISTRICT No. 2, STEVENS COUNTY, *Respondent.*

R. P. WOODWORTH, *Appellant,* v. UNION HIGH SCHOOL DISTRICT No. 3, STEVENS COUNTY, *Respondent.*[1]

SCHOOLS AND SCHOOL DISTRICTS—WARRANTS—ISSUANCE—REGISTRATION AND DELIVERY.   The fact that school district warrants issued for supplies purchased, were not countersigned and registered by the auditor before delivery, under Rem. Code, §§ 4554, 4557-2, does not prevent their subsequent countersigning and registration before any change in the situation of the parties, who were in the same position as though new warrants had been then issued, countersigned, registered and delivered.

SAME—CLAIMS AGAINST DISTRICT—PAYMENT IN WARRANTS—BONA FIDE ASSIGNEES.   School district warrants issued in payment of supplies to an agent having apparent authority to make the collection, and assigned to a *bona fide* purchaser prior to any notice of want of authority, pay the indebtedness as effectually as if the payments had been in money, and requires payment of the warrants, even after notice that the agent had no authority to receive them.

SAME—WARRANTS—TRANSFER — NEGOTIABILITY.   While school district warrants issued for supplies purchased are not negotiable within the law merchant, they are negotiable in so far as the transfer of title is concerned, subject only to any defense which might have been made to the claim on which they were founded.

[1]Reported in 175 Pac. 321.

Appeals from judgments of the superior court for Stevens county, Truax, J., entered July 20, 1917, upon verdicts of a jury rendered in favor of the defendants, in consolidated actions on contract. Affirmed.

*O. C. Moore,* for appellant.

*L. B. Donley, John B. Slater, J. A. Rochford,* and *F. Leo Grinstead,* for respondents.

PARKER, J.—These cases were before this court upon appeal from prior judgments rendered against the plaintiff, Woodworth, as assignee of the Self-Winding Clock Company, which judgments were reversed and new trials awarded to the plaintiff by our decision reported in 92 Wash. 456, 159 Pac. 757, to which we now refer for a statement of the facts of the controversy. The cases were again, by agreement of the parties, tried together in the superior court for Stevens county, resulting in verdicts and judgments against the plaintiff, denying him recovery, from which he has again appealed to this court.

There is here presented, as upon the former trial and appeal, the question of the authority of Jansson, as agent for the Self-Winding Clock Company, to collect for it the amounts owing by the school districts for the installing of clocks and appliances, by the contention made in appellant's behalf that the trial court erred in refusing to sustain his counsel's motion, timely made, for judgments notwithstanding the verdicts, upon the ground that the evidence was such as to entitle him to judgments against respondents for the amounts claimed, as a matter of law. A review of this record convinces us that the facts upon which these verdicts and judgments rest are substantially the same as those upon which the former verdicts and judgments rested, except certain evidence excluded upon

the second trial in harmony with our decision rendered in reversing those judgments and awarding a new trial, and except certain evidence touching the manner of issuing the warrants to Jansson in payment of the clocks and appliances. Assuming for the present that the latter does not call for the reversal of these judgments, and that we have here for consideration only the question of Jansson's authority, as agent of the clock company, to collect from respondents the amount owing by them for the clocks and appliances, at the time he received the warrants, we feel constrained to hold, as upon the former appeal, that the jury was warranted in finding, as it did in effect, that Jansson then had such apparent authority, and therefore such real authority, in so far as the rights of the appellant here involved are concerned. We deem it unnecessary to again review that question.

It is claimed by counsel for appellant, and we assume, for argument's sake, that the issuance and delivery of the warrants to Jansson was attended by certain irregularities; from which they argue that respondents did not, in effect, pay Jansson, as agent of the clock company, until after they had notice that the clock company claimed he was not its agent for the purpose of collecting the amounts owing by them for the clocks and appliances, although at the time of the issuance of the warrants respondents may have acted in good faith in issuing and delivering the warrants to Jansson upon the theory that he was then authorized to collect the amounts owing by them for the clocks and appliances. The warrants were issued and delivered to Jansson on December 9, 1911. They were not, prior to their delivery to him, presented to the county auditor for countersigning and registration as provided by §§ 4554, 4557-2, Rem. Code, which read:

"He [county auditor] shall countersign and register warrants for the payment of all teachers' salaries, supplies, apparatus, and accounts against the districts upon the written order of the majority of the members of the school board of each district." . ·

"He shall register in his own office, and present to the treasurer for registration in the office of the county treasurer, all warrants of the first and second-class districts received from secretaries or clerks thereof before delivery of the same to claimants."

Respondents appear to be school districts of the second class. A short time after receiving the warrants, Jansson transferred them by blank indorsement and delivery to the Bank of Colville. They were, about the same time, presented either by Jansson or the bank to the county auditor, when they were countersigned and registered by him in the manner prescribed by the law above quoted. The argument seems to be that, since this was done after delivery of the warrants to Jansson, their issuance and delivery to him were illegal and beyond cure. We think this is not so, in so far as appellant's rights here involved are concerned. Appellant is in the same position as if Jansson had caused these warrants to be surrendered to respondents and they had issued new ones and had them countersigned and registered by the county auditor and then delivered them to him, and he, in turn, had assigned them by indorsement and delivery to the bank before respondents had any notice of appellant's claim that he was not its agent for the purpose of collection. In other words, these warrants were issued by respondents, countersigned and registered by the county auditor, and delivered to Jansson and by him assigned to the bank long before respondents had any knowledge of appellant's claim that Jansson was not its agent for the purpose of collecting the amounts owing by them for the clocks and appliances.

Appellant, we think, is in no position to complain of the order in which the issuance, countersigning and registration of the warrants occurred. Plainly, neither the clock company nor appellant was in the least prejudiced by the order in which these acts occurred.

These warrants were finally paid in due course to the bank by the county treasurer from funds of respondents on April 25, 1914, which was about two months after the commencement of this action. Respondents had notice of appellant's claim that Jansson was not its agent for the purpose of collecting the amounts owing by them, at the time of the commencement of this action and for some time prior thereto, but not until long after the issuance of the warrants to Jansson, their countersigning and registration by the county auditor, and their transfer by Jansson to the bank. It is contended in appellant's behalf, in substance, that this knowledge coming to respondents before the warrants were actually paid by the county treasurer, respondents were bound to take steps looking to the prevention of the payment of the warrants, and not doing so, they, in effect, paid Jansson, by the payment of the warrants to the bank, after having notice of appellant's claim that he was not its agent for the purpose of collecting the amounts owing by them for the clocks and appliances for which the warrants were issued. This contention was, in effect, disposed of by our former decision favorably to respondents, since these facts appear in the record upon that appeal, though it seems to have received but brief notice therein. We are convinced, however, that it was rightly so disposed of. The warrants having been lawfully issued to Jansson upon the theory that respondents could then pay the indebtedness to him because of his apparent authority to collect the indebtedness, and he having transferred them to the bank, an inno-

cent holder, we think it would be inequitable to now hold that the warrants did not, in effect, pay the indebtedness to Jansson as effectually as if respondents had then paid him in money. It is true we have held that such warrants are not negotiable instruments within the meaning of the law merchant, but we have also held that such warrants do possess the qualities of negotiable instruments in so far as the manner of transfer of their title is concerned. In *Fidelity Trust Co. v. Palmer,* 22 Wash. 473, 61 Pac. 158, 59 Am. St. 953, Chief Justice Gordon, speaking for the court, said:

"The great weight of authority is that a county or city warrant possesses all of the qualities of negotiable paper but one, viz., that it is open to any defense which might have been made to the claim upon which it is founded. For all purposes involving its title, it must be treated as negotiable."

See, also, *Marcus v. Ofner, ante* p. 478, 175 Pac. 31.

This is not a question of respondents having any defense against the indebtedness for which the warrants were issued.

The jury having, in effect, found that respondents were authorized to pay the indebtedness to Jansson, as the evidence warranted, and respondents having, in payment of such indebtedness, lawfully issued to him the warrants, possessing qualities of negotiability in so far as the manner of transferring their title is concerned, and the bank having innocently acquired them, we are of the opinion that it is now too late for the clock company, or appellant, its assignee, to insist that their payment by the county treasurer was the payment of the indebtedness by respondents after they had notice of the clock company's claim of want of authority in Jansson to collect the indebtedness.

Some contention is made that the trial court erred

in refusing to give certain requested instructions. We think that the requested instructions were given by the court in substance in so far as appellant was entitled thereto.

The judgments are affirmed.

Main, C. J., Mitchell, Tolman, and Fullerton, JJ., concur.