Miller v. Knights and Ladies of Security.

No. 21,749.

ELIZABETH MILLER et al., *Appellees*, v. THE NATIONAL COUNCIL
OF THE KNIGHTS AND LADIES OF SECURITY, *Appellant.*

SYLLABUS BY THE COURT.

1. BENEFIT INSURANCE—*Pleadings—Reply—No Substantial Departure.*
The reply examined, and held not to amount to such a departure as
to warrant a reversal.

2. SAME—*Trial—Improper Question.* An objection to a question calling
for the conclusion of a witness was rightfully sustained.

3. SAME—*"Corporal Appearances"—Indication of Health.* "Corporal
appearances and conduct as indications of the inward health or lack
of it are relevant."

4. SAME—*Hypothetical Question—Omission of One Fact—No Material
Error.* The omission of one fact from the hypothetical question pro-
pounded to one of several witnesses did not constitute material error.

5. SAME—*Demurrer to Evidence—Properly Overruled.* The demurrer to
the plaintiffs' evidence was properly overruled, and requests for in-
structions raising the same question as such demurrer were properly
refused.

6. SAME—*Instructions.* An instruction as to the necessity of concurrent
delinquency, suspension, and bad health was not erroneous.

7. SAME—*Instructions—Forfeiture—Proof.* In view of the issues raised
by the pleadings, no error was committed by charging that the de-
fense must be proved by the greater weight of the evidence, and that
the defense of forfeiture must be established by clear and satisfactory
proof.

8. SAME—*Nonpayment of Dues—Reinstatement—Condition of Health.*
To entitle the member to reinstatement, she must, aside from slight
troubles or infirmities not usually ending in serious consequences,
have been in fact free from any disease or ailment which tended seri-
ously or permanently to weaken or impair her constitution.

9. SAME—*Instruction Relating to "Good Health" Erroneous.* It was
error to instruct that if the insured enjoyed such good health and
strength as to justify the reasonable belief that she was free from
derangement of organic functions or symptoms, and to ordinary ob-
servation or outward appearance her health was reasonably what
might have been expected, the requirements as to good health were
satisfied.

10. SAME—*Interest on Amount of Certificate.* It was not error as against
the defendant to allow interest from the date of filing proofs of death.

Appeal from Leavenworth district court; JAMES H. WEN-
DORFF, judge.   Opinion filed October 12, 1918.   Reversed.

*George R. Allen,* of Kansas City, and *Benjamin F. Endres,* of Leavenworth, for the appellant; *A. W. Fulton,* of Chicago, Ill., of counsel.

*A. E. Dempsey,* of Leavenworth, for the appellees.

The opinion of the court was delivered by

WEST, J.: The defendant appeals from a judgment recovered on a membership certificate issued to the plaintiffs' mother, and complains principally of a departure in the pleadings, of error in the admission of testimony and giving and refusing to give instructions.

The petition pleaded full performance of all the conditions precedent, the answer alleged a breach of warranty by delay in making payments and an attempt to reinstate the insured to membership when she was not in good health, and the reply pleaded waiver and estoppel. There was a motion to strike and a motion to elect, and both were overruled. Upon the theory that any delays in payment, or questions as to reinstatement, had been waived, it was proper to allege in the petition that the conditions of the certificate had been complied with, plaintiffs not being required to know in advance that the defendant would claim otherwise. Such questions having been raised by the answer, the reply which asserts an inability by reason of waiver and estoppel does not amount to such a departure as to warrant a reversal. (*Benefit Association v. Wood,* 78 Kan. 812, 98 Pac. 219; *Savage v. Modern Woodmen,* 84 Kan. 63, 113 Pac. 802; *Fritts v. Reidel,* 101 Kan. 68, 165 Pac. 671; *Bank v. School District,* 102 Kan. 98, 169 Pac. 202.)

The financier of the local council was asked whether the deceased had been in suspension more or less than sixty days when she made payment of her assessment for August and September on October 3, 1916. This was objected to as calling for a conclusion, as incompetent, irrelevant, and immaterial, and assuming what the record might show, which objection was sustained. The witness had already produced account books showing when the various assessments had been paid. The question called for the conclusion of the witness upon a matter for the jury to determine, and, moreover, the desired evidence was not produced on the motion for new trial, hence no error can be predicated on the ruling. (*Kuhn v. John-*

*son,* 91 Kan. 188, 137 Pac. 990; *Maris v. Street Railway Co.,*
98 Kan. 205, 158 Pac. 6; *Imel v. Railway Co.,* 100 Kan. 130,
163 Pac. 807.)

Neighbors who were well acquainted with the deceased were
permitted to testify that she appeared to be in vigorous health,
and that on one occasion she did not appear to be tired. This
testimony was competent, not on the theory that healthful ap-
pearance was sufficient, but for the reason that one who acts
and appears to be free from disease might properly, in the ab-
sence of other testimony, be presumed to possess good health,
and for the further well-known reason that serious impair-
ment of health is ordinarily manifested by the appearance and
observable condition of the patient. "Corporal appearances
and conduct as indications of the inward health or lack of it
are relevant." (1 Wigmore on Evidence, § 223.)

Complaint is made that certain hypothetical questions did
not include all the facts set forth in the evidence. The omitted
fact referred to had reference to a statement in the proofs of
death, "History of hemorrhage 6 weeks previous to opera-
tion." These proofs were signed by Drs. Lloyd and Smith, Dr.
Lloyd being assistant in the operation from the shock of which
the deceased died. Dr. Smith, when on the stand, was not
asked expressly about this matter, except by assuming that
there was a history of hemorrhage and by asking if any sort
of growth would be likely to produce one. The omission oc-
curred in the examination of one physician, Dr. Darrah, and
while it might well have been included, the failure so to do was
not sufficient to constitute material error in view of all the
other testimony in relation to the health of the deceased.

It was not error to overrule the demurrer to the plaintiffs'
evidence, neither did the trial court err in refusing instructions
offered by the defendant which concededly raise the same point
as that raised by the demurrer.

Instruction No. 2 is criticised because of the expression that
the delinquency, suspension, bad health, and attempt at rein-
statement alleged in the answer must have been concurrent.
Of course, unless the reinstatement was at a time when the
claimant was not in good health it could not avail the defendant,
and if not made at a time of delinquency or suspension it would
have no effect. At any rate, we find no material error in the

use of the language complained of, and we do not perceive that the jury were misled thereby.

In the instruction just referred to, the jury were told that the defense must be proved by the greater weight of the evidence. In instruction No. 3 they were charged that before the defense of forfeiture could be maintained it must be established by clear and satisfactory proof. The answer, among other things, denied that the proofs of death showed the plaintiffs to be entitled to participate in the benefit fund, and expressly pleaded a forfeiture for nonpayment of dues and assessments, and alleged that the payment of arrearages was accepted upon the warranty that the insured was then in good health, whereas, in fact, she was not then in good health. As the instruction had reference only to the question of forfeiture, and is concededly correct as an abstract proposition of law, it does not appear that any error was committed in giving it. (*Insurance Co. v. Rammelsberg*, 58 Kan. 531, 50 Pac. 446; *Bank v. Reid*, 86 Kan. 245, 120 Pac. 339; *Herrald v. Paris*, 89 Kan. 131, 130 Pac. 684; *Hockett v. Earl*, 89 Kan. 733, 133 Pac. 852; *Hewey v. Fouts*, 91 Kan. 680, 139 Pac. 407.)

Instruction No. 14 was:

"By the words, 'Good Health' is meant that the person is free from any disease or ailment that affects the general soundness and healthfulness of the human body, or of any of its organs or parts."

Counsel regards this as a good definition of good health, but complains because in instruction No. 4, referred to as correct in instruction No. 9, a different definition was given. Instruction No. 4 was as follows:

"Upon the question of good health you are instructed that good health does not mean a perfect physical condition. The word 'good' is comparative and does not mean that the deceased was free from all infirmities as such an interpretation would exclude from the list of insurable lives a large proportion of mankind. The term must be interpreted with reference to the subject matter of the business with which it is related. Ordinarily slight troubles or infirmities not usually ending in serious consequences may be regarded as included in the term good health. Bad health or illness means something more than a temporary indisposition which does not really affect the soundness of the system, substantially impair the health, materially weaken the vigor of the constitution or seriously derange the vital functions. *If the insured enjoyed such good health and strength as to justify the reasonable belief that she was free from derangement of organic functions or symptoms and to ordinary*

Miller v. Knights and Ladies of Security

*observation or outward appearance, her health was reasonably what might have been expected, the requirements as to good health were satisfied;* and the burden of proof is upon the defendant to establish by the preponderance or greater weight of the evidence that the deceased was not in good health, at the time or times her dues became delinquent, if you should find that she did become delinquent."

The italicised part of this instruction is the subject of counsel's criticism. Good health, and not the appearance thereof or the reasonable belief therein, was the essential condition in this case.   There was evidence tending to show that the diseased condition which, in the opinion of the doctor, required an operation from the shock of which the death occurred, existed when the reinstatement occurred, although there was also testimony to the effect that there was no outward appearance of such condition and possibly nothing to warrant a belief therein.   It was not a question of good faith, but one of actual good health, and the two instructions were not harmonious, but conflicting and confusing.   The instruction as given might apply to the question of good faith in case of a person representing himself to be in good health, but it sometimes occurs that one may unconsciously bear the seeds of a ravaging disease, or be the subject of a fatal but insidious malady, by reason of which his right to insurance or reinstatement would be lost.   In this instance, to entitle her to reinstatement, the member must, aside from slight troubles or infirmities not usually ending in serious consequences, have been in fact free from any disease or ailment which tended seriously or permanently to weaken or impair her constitution.   It was error, therefore, to give instruction No. 4 as it was worded and to use it by reference in a subsequent instruction.

Other complaints touching the instructions given are substantially answered by the decision in *Allen v. Knights and Ladies*, 102 Kan. 128, 169 Pac. 569.

It was not error as against the defendant to allow interest from the date the proofs of death were filed.

Certain findings of the jury were doubtless materially influenced by the instructions as to good health, and for error in the charge in this respect the cause is reversed and remanded for further proceedings.