[Civil No. 4330. Filed October 15, 1941.]

[118 Pac. (2d) 78.]

## SCHOOL DISTRICT No. 9 OF APACHE COUNTY, and APACHE COUNTY, Appellants, v. FIRST NATIONAL BANK OF HOLBROOK, a Corporation, Appellee.

Messrs. Wilson, Compton & Wilson, for Appellants.

Mr. Guy Axline and Messrs. Armstrong, Kramer, Morrison & Roche, for Appellee.

LOCKWOOD, C. J.—The County of Apache and various school districts in said county, as plaintiffs, filed some thirteen cases against First National Bank

of Holbrook, ·called defendant, to recover moneys of the plaintiffs alleged to have been fraudulently and illegally paid to defendant on school warrants fraudulently, wrongfully and illegally issued. Each action contained a number of counts so that altogether some two hundred and seventy-eight warrants were involved therein. In each case defendant filed a motion to dismiss and a general and various special demurrers. The trial court denied the motion to dismiss and overruled all of the special demurrers, but sustained the general one based on the ground that the complaints failed to state a cause of action, and judgment was rendered for defendant. Some time thereafter plaintiffs moved for an order vacating the judgment and granting leave to plaintiffs to amend their complaint, which motion was denied, and this appeal has been taken.

By leave of this court a consolidated abstract of record was filed in the thirteen cases and the briefs argued them as one. The first question for our consideration is whether the trial court erred in refusing to vacate the judgment and grant leave to plaintiffs to amend. Under section 21–448, Arizona Code 1939, a party may amend his pleadings once as a matter of course before a responsive pleading is filed, otherwise only by leave of court or the consent of the adverse party. It was, therefore, within the sound judicial discretion of the trial court whether the suggested amendment should be allowed. Upon an examination of the amendment, we are of the opinion that it would not have materially affected the question of whether the complaints stated a cause of action. Such being the case, we think the trial court did not abuse its discretion in denying the motion to vacate the judgment and permit an amendment to the pleadings. We, therefore, consider the issue on the merits

which is whether the complaints stated causes of action against defendant.

The first count of the complaint in case No. 4330, after setting up the capacity of the various parties, proceeds as follows:

"That on or about the 25th day of July, 1933, said defendant presented to the then Treasurer of said plaintiff Apache County, at St. Johns, Arizona, for payment, a certain false and fraudulent instrument in writing, to-wit, a certain school warrant drawn on said Treasurer, which said warrant, together with the endorsement thereon, is in words and figures following, to-wit: (showing face of warrant), and on the back of said warrant appear the following endorsements:

"Presented and registered 7/1/33. Not paid for want of funds. Interest at 6% per annum from date of registration. L. R. Gibbons, County Treasurer.
"Monico Gonzales
"A. H. Garcia.

"That said warrant so presented for payment by said defendant as hereinabove set forth and so paid by said Treasurer as hereinafter alleged, was, on or about the 30 day of June, 1933, drawn by Amelia Hunt Garcia, the then elected, qualified and acting School Superintendent of plaintiff County of Apache, and was delivered by her to said defendant wilfully, wrongfully and without authority of law, and with the intent then and there and thereby on the part of said Garcia and said defendant to defraud plaintiffs and each of them, and fraudulently and in breach of, and in violation of the trust of said Garcia as School Superintendent of said County of Apache, and without being authorized so to do by any voucher or other instrument in writing signed by two or more Trustees of plaintiff School District, or by plaintiff County of Apache, or in any manner authorized by law; and that at the time said warrant was drawn by said Garcia and was received by said defendant, and was presented for payment by said defendant to the Treasurer of Apache County, and paid as hereinafter alleged, neither of the plaintiffs was indebted to said defendant in the sum of money set forth in said warrant, nor in any other

sum, nor had the defendant at any of the times herein mentioned, or prior thereto, filed or asserted any claim or demand against the plaintiffs, or either of them, because of any sum of money claimed by said defendant to be due it upon said warrant from said plaintiffs or either of them; and that all of said facts hereinabove set forth were known by said defendant, or could have been known by it by the exercise of reasonable diligence.

"That said defendant did not, either upon the presentment for payment or payment of said warrant, as hereinabove alleged, or at any other time whatsoever, disclose to plaintiffs or either of them, the above alleged facts or any of them, and that said Treasurer did, on or about the 25 day of July, 1933, pay, at St. Johns, Apache County, Arizona, to said defendant the amount directed to be paid in said warrant, together with interest thereon in the sum of $.04 from funds then in possession of said Treasurer of Apache County belonging to plaintiffs; and that by reason of said illegal and fraudulent acts on the part of said Amelia Hunt Garcia and said defendant, the plaintiffs and each of them were defrauded and suffered damage in the total sum of $10.04, no part of which has been paid to plaintiffs or either of them, and that the said defendant received and converted to its own use without authority of law, wrongfully and fraudulently the amount of money paid to it upon said warrant as hereinabove set forth."

The remaining counts in No. 4330 and the counts in the other complaints followed the same general form except as to dates and details of the warrants involved and other allegations of facts which it is claimed make such warrants illegal. Some state that the warrants were drawn on unapportioned school funds; some that they were not endorsed by the payee; some that they bore forged endorsements; some that they were endorsed by only one of two or more payees; some that they were drawn for a purpose not authorized by law; and some that they were not duly endorsed by the person entitled to receive the same. They then con-

tinue with the allegation of a demand on defendant for repayment, and that the fraudulent and unlawful acts set forth in each of the complaints were not known to plaintiffs nor did they have reasonable knowledge thereof until March 1, 1935.

It will be seen that some of these allegations go to the original validity of the warrants and some to the method of their transfer to defendant. We consider first the objections to their validity. These objections are (a) no voucher signed by two of the trustees was issued to the county superintendent for the payment shown by the warrant; (b) the warrant was not drawn on funds already apportioned to the district; and (c) the warrant was drawn for a purpose not authorized by law.

The material parts of the law governing the issuance of school warrants, as it stood at the time of the ones involved herein, as contained in the 1928 code, read as follows:

"§ 992. *Qualifications; powers and duties.* . . . The superintendent shall apportion the school money to each district of his county, and notify the county treasurer, in writing, of the amount apportioned to each district, and notify, in writing, the trustees of each school district in his county the amount apportioned to their districts. On the order of the board of school trustees of any district, he shall draw his warrant on the county treasurer for all necessary expenses against the school fund of any such district; . . . Upon receipt of such voucher the county superintendent shall draw his warrant upon the county treasurer in favor of the parties, and for the amount stated in such voucher. . . . "

"§ 993. *When may appoint teacher and open school.* When there is sufficient money in the fund of any school district to maintain school therein for eight months, if the trustees fail to have such school kept, the superintendent shall appoint a teacher and open and keep open such school, and may draw his warrant

upon the fund of such school district for the expense incurred.''

''§ 995. *May cause school building to be repaired.* The county school superintendent may . . . require the trustees . . . to repair the school buildings . . . abate a nuisance . . . if . . . can be done . . . not exceeding one hundred dollars, and there is a sufficient amount of money in the treasury to the credit of the district. . . . if the trustees neglect to make such provisions, he may . . . pay for it on his warrant on the county treasurer, payable out of the money to the credit of the district; provided, said warrant shall be countersigned by the chairman of the board of supervisors.''

''§ 1013. *Two members must sign warrants.* No order on any county school superintendent for any teacher's salary, or other expense, shall be valid unless signed by at least two members of the board of trustees.''

''§ 1026. *Purposes for which school money may be used.* Boards of trustees shall use the school money received during the school year from the state and county apportionment exclusively for the payment of salaries of teachers and other employees of the district and contingent expenses for the school year. If a balance remain in the school fund of a district after the expense of maintaining school for a period of eight months during the school year has been paid, such balance may be used in paying debts of the district incurred during the previous years for teachers' salaries and contingent expenses, or it may be expended for repairing the school house or improving the school ground, or in the purchase of school furniture, fixtures, equipment and supplies, but no part of said money may be used in paying interest or principal of the bonded debts of the district, or in the purchase of lands for school purposes. Funds received from sources other than state, county or school district levies, may be used in building schools or in purchasing lands for schools.''

''§ 1092. *Duties of county treasurer relative to school funds.* The county treasurer shall: Receive

and hold as a special fund all public school money, and keep a separate account thereof, and when it is apportioned among the school districts, shall keep a separate account for each district; . . . pay over, on the warrants of the county school superintendent, duly indorsed by the person entitled to receive the same, any or all money; . . .''

All persons dealing with a municipal corporation are bound to know the public law regulating the actions of such corporation and to deal with it on the basis of that law. When, therefore, a person deals with a school district or its warrants, he is bound to know for what purposes and under what circumstances those warrants may be legally issued, and if he accepts them when they are issued, in violation of a positive statute, he cannot recover on such warrant in an action against the district. The county superintendent in issuing warrants against a school district acts as the statutory agent of the district, and this is necessarily known by all persons dealing with the district. It is the general rule of law that those dealing with a known agent cannot hold the principal when the agent acts outside of his authority, express or implied. Much more is this true when the agent is one created by statute with express statutory limitations upon his power.

It will be seen that the first requisite to the issuance of a school warrant is an order of the board of trustees of the district, signed by at least two members of said board. Section 1013, *supra*. After such an order is received by the county school superintendent, and not until then, may he draw a warrant upon the county treasurer for the purpose and amount set forth in the order. There are certain exceptions to this rule set forth in sections 993 and 995, *supra,* but they are matters of defense and need not be negatived in the complaint. *Ansell* v. *City of Boston,* 254 Mass.

208, 150 N. E. 167; *Span* v. *Jackson, etc., Min. Co.,* 322 Mo. 158, 16 S. W. (2d) 190; *Rowell* v. *Janvrin,* 151 N. Y. 60, 45 N. E. 398; *City of Kansas City* v. *Garnier,* 57 Kan. 412, 46 Pac. 707.

■ We think, therefore, that when one deals with a school warrant he is bound to ascertain at his peril whether it was issued by the county superintendent under authority of the law, and if it was issued without the written authorization of two members of the board of trustees, as set forth in section 1013, *supra,* it is void unless the facts bring it within the provisions of sections 993 and 995, *supra,* and this, as we have just stated, is a matter of defense.

■ It may be contended that the warrant was regular on its face and if taken by a *bona fide* holder for a valuable consideration the defense that it was issued without the necessary voucher cannot be raised. This depends upon whether school warrants are negotiable instruments, and we consider that question. It is almost universally held that they are not either in the sense of the law merchant,—*Woodworth* v. *Stevens County School Dist. No. 2,* 103 Wash. 677, 175 Pac. 321; *Commercial Natl. Bank* v. *Wyandotte County School Dist. No. 17,* 102 Kan. 98, 169 Pac. 202; *Kimmons* v. *Jefferson County Board of Education,* 204 Ala. 384, 85 So. 774; or the negotiable instrument law, —*Petters & Co.* v. *Albany County School Dist. No. 5,* 37 Wyo. 237, 260 Pac. 678, 263 Pac. 105.

As was said in *Mayor of Nashville* v. *Ray,* 19 Wall. 468, 477, 22 L. Ed. 164:

" . . . But to invest such documents with the character and incidents of commercial paper, so as to render them in the hands of *bona fide* holders absolute obligations to pay, however irregularly or fraudulently issued, is an abuse of their true character and purpose. It has the effect of converting a municipal organization into a trading company, and puts it in the power of corrupt officials to involve a political

community in irretrievable bankruptcy. No such power ought to exist, and in our opinion no such power does legally exist, unless conferred by legislative enactment, either express or clearly implied.''

Such being the case, an assignment thereof merely transfers whatever claim the original holder had against the district, subject, however, to all defects and irregularities in their issuance, such as want of authority, fraud, or want of consideration. *Davis* v. *Steuben School Tp.*, 19 Ind. App. 694, 50 N. E. 1. And the school district may set up against them any defenses that could have been made against them in the hands of the original holder. *Shakespear* v. *Smith*, 77 Cal. 638, 20 Pac. 294, 11 Am. St. Rep. 327; *Petters & Co.* v. *Albany County School Dist. No. 5, supra; Oppenheimer* v. *Greencastle School Tp.*, 164 Ind. 99, 72 N. E. 1100; *Baker Lbr. Co.* v. *A. A. Clark Co.*, 53 Utah 336, 178 Pac. 764; *Kellogg* v. *Comanche County School Dist. No. 10*, 13 Okl. 285, 74 Pac. 110.

We hold, therefore, that in an action on a school district warrant a pleading which alleges that the warrants were issued without a voucher signed by two members of the board of trustees would state a defense to such an action. We think this rule is implied, although not specifically held, by the early case of *Apache County* v. *Barth*, 6 Ariz. 13, 53 Pac. 187. In that case action was brought on certain county and city warrants which were regular on their face, and it was held that these warrants were *prima facie* binding and legal, but it was also held that it was permissible to show in defense against the warrants that they were not valid by reason of fraud, irregularity or some similar cause. So far as the defense that the warrants were issued before an apportionment was made to the funds of the district, we think this is a mere irregularity at most, which would not affect the validity of the warrant, though it might delay its payment until after

the apportionment was made. Of course, if it appears that the warrant was drawn for a purpose not authorized by law, that plea would be a good defense to an action upon the warrant, just the same as would a complete failure of consideration. But when the warrant shows on its face the purpose for which it was drawn, and that such purpose is proper, we think the mere general allegation that it was for one not authorized by law is insufficient. An effective pleading on that issue should point out that the ostensible purpose of the warrant was not its real purpose. *Apache County* v. *Barth, supra.*

█ We next consider the objections which assume the original validity of the warrant, but question its legal transfer. Section 1092, *supra,* authorizes the county treasurer to pay on warrants of this nature "duly indorsed by the person entitled to receive the same." In an action on the warrant the person originally entitled to receive it is the payee set forth on its face, and we think that in such an action an answer alleging that the warrant is not endorsed by the person entitled to receive the same is good, although it is, of course, subject to a reply showing that the original payee has legally transferred it to the person bringing the suit, and that the latter has properly endorsed it. If, then, the complaints involved herein containing the allegations we have held good were answers to actions brought by the present defendant against the treasurer to collect the amount of the warrants, they would set up adequate defenses thereto. But these actions are not actions to enforce collection by the holder of the warrants but by the school districts and the county to recover money which has already been paid to the defendant therein, and it is urged by the latter that even assuming what we have stated is the correct law if it had brought action

on the warrants, the rule is very different when the action is one to recover money which it has already collected thereon, and it cites and relies upon the case of *Jarvis* v. *Hammons*, 32 Ariz. 124, 256 Pac. 362; Id., 32 Ariz. 318, 257 Pac. 985. We, therefore, consider this case to see whether it supports the contention of defendant. The facts therein may be stated as follows: Apache County in 1924 had on deposit with the Bank of Winslow approximately $30,000. The bank became insolvent and in the course of liquidation the receiver paid to it the sum of $12,000 on account of the deposits. At the same time the bank held in its possession certain evidences of indebtedness which consisted of warrants issued by the county for salaries owed to its officers, and also of school warrants of different districts of the county, which last warrants had been duly registered by the county treasurer of Apache County, as provided by law. The receiver endeavored to collect these various warrants and the county claimed that it was entitled to have set off against them the amount of the deposit which was still due. We had previously held that a depositor in an insolvent bank was entitled to set off against any indebtedness which he might owe the bank the amount of his deposit, and the question for our consideration was whether these various warrants in question were an indebtedness of the county. If they were, it was entitled to set its deposits off against them. If they were not, it could not. On our original opinion we held that the county warrants constituted such an indebtedness, but that the warrants of the school district did not. On rehearing we affirmed our decision in regard to the county warrants, but reconsidered it so far as the school district warrants were concerned, and it is upon what we said in regard to these latter that defendant bases its chief argument. Therein we

quoted from the decision of *National Surety Co.* v. *State ex rel. Richards,* 111 Okl. 185, 239 Pac. 262, and said:

"The county and the school districts, according to the doctrine of the case above cited, occupy respectively the position of banker and depositor, and, so far as the moneys raised for district purposes and reaching the hands of the treasurer are concerned, the relationship is that of debtor and creditor. The original indebtedness upon which a school warrant is based is of course that of the district, and as we said in our previous opinion, any action to enforce such indebtedness would be brought against the district and not the county. When, however, the district issues a warrant in payment of the indebtedness, directed to the county treasurer, and such warrant is presented to the latter and by him registered, we think the indebtedness is no longer that of the district. While it is considered in some states that the giving of a check is an assignment *pro tanto* of the drawer's deposit so as to give the holder a right of action against the bank if payment is improperly refused, the more generally accepted view, and that followed in Arizona, is that the bank owes no duty to the holder of a check in respect to the payment thereof, and its refusal to pay gives the holder no right of action against the bank. [Citing case.] When, however, the bank certifies a check presented to it, it enters into an absolute undertaking to pay the check when it is presented, and the bank then becomes indebted to the holder of the check, who may maintain an action against it for failure to pay on presentation. [Citing cases.]

"Whether or not an unregistered warrant of a school district is in the same condition as an uncertified check drawn on a bank we need not for the purposes of this case determine, but we have no doubt that when the warrant has been presented to the county treasurer and is by him registered, it then becomes an agreement of the county to charge to the account of the school district the amount of the warrant and to pay it in the order of its registration, when funds are available to the credit of the district."

It is argued that since we have held in *Jarvis* v. *Hammons, supra,* that when a bank certifies a check it enters into an absolute agreement to pay it and becomes indebted to the holder of the check, who may maintain an action against it for failure to pay on presentation, while the bank has the right to charge the amount of the check against the account of the depositor, it follows if the check for any reason is void the only remedy of the depositor is an action against the bank for wrongfully charging his account with the check and, therefore, in the present case, since we have held the counties and school districts occupy the position of banker and depositor, or debtor and creditor, the only remedy of the school districts whose deposit with the treasurer has been depleted by the payment of the warrants is an action against the treasurer of the county and his bondsmen for unlawfully paying the illegal warrants.

The argument is plausible but we think not tenable for two reasons. First, nowhere in that opinion have we said either directly or by reasonable implication that the warrants of a school district are negotiable instruments. The analogy set forth between them and a certified check of the bank went only to the obligation of the county to pay the registered warrant if, as, and when funds became available for that purpose. Second, it is assumed that when a bank has paid a certified check and charged it against the account of a depositor under circumstances where the charge cannot be sustained, the only remedy of the depositor is against the bank. Not every transaction between debtor and creditor, or even between banker and depositor, affecting the debt or deposit, is necessarily made through the means of a negotiable instrument. An order on a bank to pay money out of a deposit may well be made and the bank may assume

primary liability thereon without the order possessing negotiability. We reaffirm our holding in *Jarvis* v. *Hammons, supra,* in regard to the status of registered warrants as being an indebtedness of the county, but we did not in that case say or intend to say that such registered warrants possessed all the qualities of negotiable instruments in the hands of an innocent holder for value. Further, it by no means follows that a bank which certifies a check is, under all circumstances, obliged to pay it or that it may never recover the proceeds back if there is anything wrong with the check. It is only to the *bona fide* holder for value that the bank is liable on a certified check without recourse, and in all events if there is a defect in the instrument which, at the time of certification, was known to the holder the bank may plead such defect in an action on the check. *National Plumbing, etc., Co.* v. *First National Bank,* 260 Ill. App. 431; *Baldinger & Kupferman Mfg. Co.* v. *Mfrs.'- Citizens T. Co.,* 93 Misc. 94, 156 N. Y. Supp. 445; *National Bank* v. *Rockhold,* 141 Md. 439, 119 Atl. 263; *Farmers' Sav. Bank, etc.,* v. *American Trust Co.,* 199 Mo. App. 491, 203 S. W. 674. And we think that under the doctrine of unjust enrichment it may also recover back from such holder with notice any amount which it has paid. Does it then follow, if this be true, that the only remedy of the original depositor whose funds have been depleted by the charging of the void certified check against his account is against the bank? There is no doubt that he has such a remedy, and that it is the one almost invariably pursued. The reason is obvious. The proof necessary to establish a case against the bank is generally much simpler than that which is required to establish a case against the payee of the check, and the bank is almost always financially responsible for the judgment, while the payee fre-

quently is not. Nevertheless we see no reason in equity why, if the depositor chooses that course, he may not bring his action originally against the person who was unjustly enriched by reason of the entire transaction, and thus avoid the circuitous process of two actions instead of one. Indeed, a situation might well arise where the only real protection to the depositor would be such an action. Suppose, for example, that after the bank has charged the check against the deposit it becomes insolvent. The depositor may only recover from the bank his proportionate share of its assets, and even if the receiver of the bank succeeds in recovering the full amount of the check from the payee of the bogus instrument, that is pro-rated among all of the creditors of the bank. On the other hand, if the depositor is permitted to sue the payee of the check, who has really gotten the money, he may be able to recover the full sum. While we know of no cases directly in point upon the right of a depositor to bring an action directly against the payee of a void check who has been unjustly enriched under circumstances analogous to those appearing in the present case, yet the Restatement of the Law of Restitution, at paragraph 126, subdivision (1), lays down the principle we have enunciated, in the following language:

"Where a person has paid money or transferred property to another in the erroneous belief, induced by a mistake of fact, that he owed a duty to the other so to do, whereas such duty was owed to a third person, the transferee, unless a *bona fide* purchaser, is under a duty of restitution to the third person."

In the present case, according to the allegations of the complaints, the county paid money to the bank in the erroneous belief, induced by a mistake of fact, that it owed a duty to the bank to do so, whereas such duty, to wit, the payment of the district's money,

was owed to the district. Since, under the law in regard to the character of school district warrants, the bank could not be a *bona fide* purchaser it is under a duty of restitution to the school district of the latter's money, with which the bank was unjustly enriched, and the district may, at its election, bring an action for restitution directly against the bank.

 Upon the whole case we are of the opinion that the complaints which set up the matters which we have held would be a good defense on their face, in an action by the bank against the county to recover on the warrants, are good as against a general demurrer in the present proceedings against the bank, subject of course to the right of the latter to reply and set up any affirmative defenses which it may have.

The judgment of the superior court of Navajo County is reversed and the case remanded with instructions to rule upon the general demurrer in accordance with the principles laid down in this opinion.

McALISTER and ROSS, JJ., concur.