THE UNION NATIONAL BANK v. HUNT, *Appellant.*

1. Sale of Bank Stock: REPRESENTATIONS BY BANK OFFICER AS TO CONDITION OF THE BANK. A person buying stock of a bank from the bank is entitled to rely upon assurances of an officer of the bank as to its financial condition; and if already a stockholder is not bound to avail himself of his right of examining the books of the bank.

2. ——— : ———. A representation by a bank officer that stock of his

bank is worth $100 per share is a mere expression of opinion or commendation of the stock, and if it turns out to be false a note taken by him for the price of the stock will not thereby be avoided though it was relied on by the purchaser, but it is otherwise with a representation that the bank is in a solvent condition and doing a good business.

3. **National Banks :** POWER TO SELL THEIR OWN STOCK. When a Na tional bank purchases its own stock to protect itself from loss upon a debt, it is bound to sell the stock within six months, and may sell on credit and take the purchaser's note, with the stock sold as collateral to secure it, provided this is done in good faith.

4. **Ultra Vires as a Defense.** An abuse of the corporate powers is not a sufficient defense to such a note. The question of misuser will not be decided collaterally by setting aside a sale otherwise good.*

*Appeal from St. Louis Court of Appeals.*

REVERSED.

This is an action on a promissory note made by the defendant, Theodore Hunt, and indorsed by Charles L. Hunt. There is an allegation that the indorser waived demand and notice. As to this the jury found for the indorser, and as to his liability nothing more need be said. The petition alleges that the defendant Theodore Hunt purchased of Aull & Pollard one hundred shares of stock in the bank of the corporation plaintiff, at eighty cents on the dollar, in consideration of which, a note at four months for $8,000, made by Theodore and indorsed by Charles Hunt, was given to Aull & Pollard, and the stock transferred to Theodore Hunt; and the note was assigned to plaintiff for value, before maturity, by Aull & Pollard; that at the maturity of that note, defendants requested an extension, and in consideration thereof executed the note in suit, which is dated June 4th, 1873, and is for the same amount and time as the note of which it is a renewal.

The defendants admit the execution and indorsement of the note in suit, and that plaintiff was a banking corporation under the laws of the United States; and deny

*Syllabi Nos. 3 and 4 are taken from 7 Mo. App. 42, and are inserted by order of the court.

the other allegations of the petition, and set up two distinct grounds of affirmative defense. First, they say that the plaintiff had purchased seven hundred and eighty shares of the stock of its own corporation, in violation of the act of Congress, which prohibits such a bank to purchase or hold its own shares, or to make a loan upon them, except such security or purchase shall be necessary to prevent loss of a debt previously contracted in good faith; and that, having and illegally holding these shares, plaintiff contrived that one hundred of these shares, should be regarded as the property of Theodore Hunt, and that he should borrow from the bank $8,000 on such shares, and deposit them as collateral security for his notes; and the note sued on was a renewal of the note given to carry out this illegal transaction, and represents a discount made by the bank on the security of its own shares, in violation of law. The second affirmative defense is, that the note was obtained by false and fraudulent representations, and that the consideration has failed. The particulars of this defense are set out in the answer with great detail.

The testimony of Charles Hunt was to the effect that he is the father of his co defendant, Theodore Hunt; that he was on terms of intimacy with Aull, the president, and with Pollard, the vice-president of the plaintiff, and with some of the directors; that he kept his account in plaintiff's bank; that his son Theodore, a man of about thirty years of age, had a separate estate, owned five shares in plaintiff, and kept his account in plaintiff's bank; that Pollard, in the presence of Aull, represented to witness that the bank had been compelled to purchase from the estate of O'Fallon & Hatch, in bankruptcy, a large number of its own shares; O'Fallon & Hatch being very heavily indebted to the bank. Pollard said that he was desirous to sell these shares to friends of the directory; and mentioned two or three men who would take one hundred shares each. The bank, Pollard said, was in a flourishing condition, making money; its shares were selling at eighty-

two, and were worth a hundred, and would soon be sought for at that price. Pollard requested witness to get his son Theodore to take one hundred shares, out of friendship for the officers of the bank; the dividends would pay the interest. Pollard said that Theodore would never be called upon to pay the note; that if he did not wish to hold the shares, they would find some one to take them off his hands. This conversation was repeated by witness to Theodore, word for word, without advising him in regard to the matter. Witness told his son that if he desired to comply with Pollard's request, he, witness, would indorse the note. From his intimate friendship with Pollard, witness believed that he was not deceiving him in these statements. The note was executed and indorsed; the certificates of stock were assigned by Theodore in blank, and the note and stock were rolled up together and put away in the vaults of the bank by Aull & Pollard, with the remark that if Theodore wanted the stock at any time for sixty or ninety days, to raise money on it, he could have it.

The testimony of Theodore Hunt corroborated that of his father. He said that he relied implicitly on Pollard's statement; that he did not want the stock, and had no idea of buying it, except to accommodate his friend Pollard; that the statement that the stock would soon be worth a hundred did not influence him, except so far as it went to show that there was no risk. When the first note matured, he had a considerable sum in plaintiff bank, and Pollard asked him whether he would pay anything on the note. Theodore said of course he would not. Pollard said, "All right. I thought perhaps you might wish to do so." The note was then renewed by the note in suit. Theodore paid accrued interest by his checks on plaintiff. He did this anticipating a dividend. The dividend was credited to him. He voted the stock on one occasion, when the question was as to the bank's going into liquidation. The bank failed in October, 1873, just before the

maturity of the note sued on. Pollard died about a month after the failure.

There was evidence in the case from which a jury might infer that this stock, at the time of the transaction, belonged to the bank, being a part of seven hundred and eighty shares purchased by the bank, in the name of Aull & Pollard, from the assignee of O'Fallon & Hatch, to protect the bank, and to prevent loss from a *bona fide* indebtedness of the bankrupts to the bank. There was also evidence tending to show that the stock in question did not belong to the bank at any time, but was owned by Aull & Pollard, who were doing a brokerage business and speculating in stocks and bonds. There was evidence tending to show that Aull & Pollard owed the bank, when it failed, about $200,000; that their debt to the bank was paid before the suit. The evidence put the value of the stock, about the date of the alleged sale to Theodore Hunt, at from $75 to $82. It had been gradually rising for some time. Some years before the transaction, it had been down to $65, and it seems to have reached its highest point about the date of the sale to Theodore Hunt.

At the instance of the plaintiff the court gave the following, among other instructions, to the jury:

1. If it appears from the evidence that the note sued on is the renewal of a prior note given for the purchase of the shares of stock in question, the fact that, when said sale was made, Isaac J. Pollard represented to the defendant, Theodore Hunt, that the bank was then in a solvent condition, and doing a good business, and that each of said shares of stock was worth the full value of $100, and that the defendant, Theodore Hunt, relied on such representations in making his purchase of said stock, and that said representations, or either of them, turned out to be false, still that is no defense in this action for the note sued on."

The court refused the following, among other instructions, asked by the defendants:

5. The court instructs the jury that if they believe from the evidence that at the time the defendant made his first note, dated February 1st, 1873, the plaintiff was the owner of the shares sold to the defendant, Theodore Hunt, and that Isaac J. Pollard and Robert Aull then were vice-president and president respectively of the plaintiff, and they or either of them, acting for or in behalf of the plaintiff in making said sale to defendant, represented to the defendant, Theodore Hunt, that the plaintiff was then in a solvent and flourishing condition; that each of said shares was then worth the full sum of $100; and that the defendant, Theodore Hunt, relied on said representations in making said purchase, and that said representations, or either of them, were false, and known to said Aull or said Pollard to be false when made, and that said Theodore Hunt, defendant, did not learn that said representations were false until after the execution of the note sued on, in renewal of the original note, then said false representations, or either of them, were such as rendered the note sued on void, and the jury will find for the defendant.

The jury found a verdict for the plaintiff as against the defendant Theodore Hunt, and there was judgment accordingly, which, on appeal to the St. Louis court of appeals, was affirmed. Defendant Theodore Hunt then appealed to this court.

*Noble & Orrick* for appellant.

*James O. Broadhead & Wm. F. Broadhead* for respondent.

HENRY, J.—We are satisfied with the conclusion reached by the court of appeals, but differ from that court with respect to the doctrine announced in the following paragraph of its opinion: "He, Theodore Hunt, chose to take the opinion of the officers of the bank, as to its condition, without any effort to get at facts on which the opinion might be based. There was here no exercise of ordinary

diligence and attention." Neither *Peers v. Davis*, 29 Mo. 186, nor *Matlock v. Meyers*, 64 Mo. 531, cited by the court of appeals as sustaining that proposition, supports it, while the contrary was expressly ruled in *Wannell v. Kem*, 57 Mo. 478; and numerous authorities are cited in the opinion delivered by Judge Napton which fully sustain the doctrine therein announced. The evidence on this point, tended to prove that what Pollard said with regard to the bank's condition, was not a mere expression of opinion, but the statement of a fact, peculiarly within the knowledge of its officers. Although defendant had the right, as a stockholder, to inspect the books, and, by an examination might have ascertained whether the statement was true or false, an acquaintance with bank-book keeping, and considerable time would have been required for such an examination; and, under such circumstances, the defendant may rely upon the assurance of the officers of the bank, and not subject himself to the imputation of negligence for a failure to examine the books of the bank.

The appellant's counsel complain of the refusal of the fifth instruction asked for defendant. We agree with the court of appeals that : " Expressions of opinion, commendation of the subject of the contract, statements as to productiveness and value, are no grounds for setting a sale aside although they are shown to be false." *Gordon v. Parmelee*, 2 Allen 213 ; *Brown v. Castles*, 11 Cush. 350. The instruction was, therefore, erroneous wherein it declared that if Aull & Pollard represented to the defendant, that each of said shares, was worth $100, and that said representation was known to Aull or Pollard to be false when made, it rendered the note sued on void. But for this vice the instruction should and probably would have been given ; and no instruction was asked by defendant, on that subject, submitting the proper question to the jury. All concurring, the judgment is affirmed.

## On Rehearing.

HENRY, J.—We adhere to the opinion heretofore delivered herein, with respect to the principles of law therein enunciated, but reverse the judgment and remand the cause for the error of the court in giving instruction No. one asked by plaintiff. We declared in the original opinion, that instruction No. five asked by defendant was erroneous, in that it told the jury, that if either of the representations mentioned therein was false, and known to Aull & Pollard to be false, plaintiff could not recover, holding that the representation in regard to the value of the stock was a mere expression of opinion or commendation of the subject of the contract, and afforded no ground for setting aside the sale; and declared that but for that vice in the instruction it should have been given. We entirely overlooked the plaintiff's instruction No. one, which declares that neither of those representations, if made, as alleged, and proved to be false, afforded any defense to the action. The judgment is reversed and the cause remanded, all the judges concurring.