CITY LIGHT, POWER, ICE & STORAGE COMPANY, Respondent, v. THE ST. MARYS MACHINE COMPANY, Appellant.

Kansas City Court of Appeals, April 7, 1913.

1. **CONTRACTS: Right to Rescind.** Where the whole trend of the petition and the acts of the plaintiff and the evidence offered by it in support of its suit show that it is in reality suing on a rescinded contract to recover the purchase money, the mere inadvertent inclusion in the petition of a claim for damages for a breach of the contract will not preclude the plaintiff from suing to recover the purchase price on a rescinded contract.

2. ——: ——. Where one has brought a suit for damages on a contract and then in a subsequent suit attempts to sue on a rescission this will not be allowed, since it involves the taking of two different and inconsistent positions. The first is a decisive act showing an intention to affirm and the other an intention to disaffirm. The mere inclusion in a petition in rescission of a claim for damages for the breach is inconsistent therewith, but it is not such a decisive act of the plaintiff as to show an election to affirm the contract where the petition as a whole shows a clear intention to rescind. At most the inclusion of a claim for damages is inconsistent in legal theory and does not show that plaintiff intended to affirm the contract.

3. ——: ——: **Pleading Departure.** If the amendment of a petition changing it from apparently one in damages for a breach of the contract to one to recover the purchase price on a rescinded contract be a departure, the departure in this case was waived by defendant since it filed no motion to strike out said petition and afterwards litigated the issues raised by the amended petition.

Appeal from Jackson Circuit Court.—*Hon. Jos. A. Guthrie,* Judge.

AFFIRMED.

*New & Krauthoff, M. H. Winger* and *P. E. Reeder* for appellant.

(1) The court's action in permitting respondent to amend its petition at the close of the trial and after both sides had rested, was erroneous. Eldredge v. Hargraves, 30 Neb. 642; Meacham v. Cooper, 36 Minn. 227, 30 N. W. 669. (2) Special damages are a proper element of recovery in this sort of an action if they are specially pleaded. Mallory v. Elwood, 120 Ia. 362, 95 N. W. 176; 35 Cyc. 451; Ellis v. Tips, 40 S. W. 524. (3) It is equally true that the original petition in this case did not state a cause of action for rescission of the contract. The necessary averments in an action for rescission of a contract of sale for breach of warranty are: First, the terms of the warranty; second, facts constituting the breach of the warranty; third, that the buyer had elected to rescind the sale immediately upon discovering the defects in the article purchased, and a return of the property to the seller or an unconditional tender back of the same; or in lieu of a return or tender back of the property, facts sufficient to excuse the failure to make such return or tender. Noel v. Hughes, 152 Mo. App. 192; Walls v. Gates, 6 Mo. App. 242; Marrow v. Rees, 69 Pa. St. 368; Plant v. Condit, 22 Ark. 454; Hoffman v. Hampton, 96 Ia. 319; Ruby Co. v. Kremer, 81 S. W. (Ky.) 251; Garland v. Spencer, 46 Me. 528; Erwin v. Detwiler, 67 Atl. (N. J.) 932; Barbour v. Hurlbut, 137 Mich. 534; Bank v. Wickersham, 99 Cal. 655; Crooks v. Eldridge, 64 Oh. St. 195; 35 Cyc. 609; Strong v. Strong, 102 N. Y. 70; McGrew v. Smith, 136 Mo. App. 343; Cahn v. Reed, 18 Mo. App. 115.

*E. S. Bennett* and *Charles R. Pence* for respondent.

But if the court erred in allowing the amendment, the defendant waived its right to take advantage of the error by refusing to stand upon its objection, and by proceeding with the trial of the issues arising upon the amended petition. Grymes v. Mill & Lumber Co., 111 Mo. App. 358; Scovill v. Glasner, 79 Mo. 454-455; Sauter v. Leveridge, 103 Mo. 621; Holt County v. Cannon, 114 Mo. 519; Forrister v. Sullivan, 231 Mo. 352; Jones v. Traction Co., 137 Mo. App. 411-412.

TRIMBLE, J.—To make this opinion reasonably clear it is necessary to set out the facts before stating the nature of the case or discussing the questions involved.

On May 26, 1911, the plaintiff, engaged in supplying electric light and power to the inhabitants of the town of Lee's Summit, entered into a written contract with defendant for the purchase of a gasoline engine to use in plaintiff's power plant at hours when its larger steam engine was not needed. By the terms of the contract the engine was to develop fifty brake horse power, to have a speed of 225 revolutions per minute, to run smoothly, and, when operating a Westinghouse direct current generator, defendant guaranteed it would make a good commercial light, and not vary in its speed more than two per cent when its load was increased from a one-third to a full load, and at full load would consume only 1/10 gallon of naphtha per horse power hour. Defendant also warranted the engine for a period of twelve months after the same was first started and that it would run smoothly and develop the actual horse power for which it was sold. Any defect in material or workmanship of said engine, discovered within twelve months after engine

first started, was to be made good by defendant upon written notice immediately following such discovery.

The price of the engine was $1550, defendant paying the freight to Lee's Summit. Of this purchase price, $50 cash was to be paid down with the contract, $150 and the freight upon arrival at Lee's Summit, and the balance in twenty-five equal notes, one payable each month, commencing thirty days after engine's arrival, and drawing seven per cent interest. The ownership and legal title to said engine were to remain in defendant and not to vest in purchaser until the payment in full of the purchase price of the engine should be made, defendant in no manner releasing its title to the engine or any part of its patent monopoly respecting same until all of such indebtedness had been fully paid in cash. And upon default in the payment of any one of said notes when it became due, then all became due, and defendant had the right to retake said engine into its possession. The contract also provided that the defendant would furnish a competent man to install the engine.

The engine arrived about July 1, 1911, and was installed in plaintiff's power house by defendant's erecting engineer, Mr. Goodrich. However, after installing, Goodrich did not get the engine to develop fifty horse power, nor would it run smoothly; but he assured plaintiff that it would do so as soon as the new wore off, as all machinery worked a little hard when new. Plaintiff then attempted to run the engine but it would not carry the load required; it would make 225 revolutions per minute with no load on, but as soon as a load was put on, the engine would slow up, and it never at any time developed more than thirty-five of the fifty horse power required, oftentimes not over eighteen to twenty horse power, and would use from one-third more to double the amount of naphtha specified. It was further shown that up to fifteen or twenty horse power the engine would make a good

light, but when the number of lights went on requiring a greater horse power, the engine would "die down" causing the lights to fluctuate and grow dim, too dim for practical use.

As soon as plaintiff ascertained this, it wrote several letters to defendant, and got a mutual friend, Mr. Benedict, who was known to defendant, to write also, notifying defendant that the engine was not up to the requirements. In reply to this letter the defendant wrote they would send Mr. Goodrich, their erecting engineer, back there in a few days. Thereupon plaintiff waited for Goodrich to come, but as he did not come and nothing more was heard from the company, the plaintiff September 26, 1911, wrote defendant that it wanted its money back and the engine taken out. Thereupon, on October 21, 1911, defendant wired plaintiff that their "man will be at your plant Friday." Prior to this plaintiff had also sent defendant a telegram saying it would pay no more monthly notes until engine was made full rating.

On or about October 24, 1911, the defendant's man, Mr. Lortz, came and did all he could to make the engine work but failed, and gave up the attempt, and so notified the defendant by wire, October 27. He also wrote the company a letter detailing the situation and suggesting that they give plaintiff in exchange another engine. Immediately after Lortz's failure to make the engine work, the plaintiff, on October 28th, wrote defendant to that effect, stating the failure of the engine to come up to specifications, and concluding as follows: "We expect this to confirm the letter of cancellation of your contract. This engine must be moved and moved at once. If you people want to send a man to dissemble the engine, please wire us at once. Hoping that you will take immediate action on this at once, we remain,               Yours very truly,

City Light, Power, Ice and Storage,

Per C. M. HANKS."

Receiving no response to this letter, plaintiff, on November 8, 1911, began this suit. Sixteen days later a stipulation was entered into between the parties "that the gasoline engine, referred to and mentioned in the plaintiff's petition, herein be dismantled and shipped back to the factory of the defendant at the expense of defendant and that such action shall not, in any way, prejudice or affect the rights of the parties hereto in the trial of said cause on its merits," and the engine was shipped back to defendant in accordance therewith. It was shown that $308.15 was paid on the engine before it was known it would not work.

As originally filed, the petition alleged the corporate existence of both parties, the making of the contract and its terms, the failure of the engine to come up to requirements, and that it was worthless for the purpose for which it was purchased. It was also alleged that defendant was duly notified; that plaintiff did all that was required of it to do in the endeavor to make said engine work; that plaintiff had paid $308.15 on the purchase price before it knew the engine would not work; that it had executed the other unpaid notes; and that it was entitled to recover back the $308.15 paid on the engine and the other notes. Another paragraph stated that plaintiff had been damaged in the sum of $500 by reason of the failure of the engine to work. The petition concluded with a prayer for judgment in the sum of $808.15, for the return of said notes and for costs.

As the defendant was an Ohio corporation with no office in Missouri, the suit was brought by attachment and the writ was levied on the engine *as the property of defendant*. On November 10, 1911, the defendant entered its voluntary appearance and, as the suit was without bond, the attachment was dissolved. Thereupon the defendant filed its answer and a counter-

claim asking judgment on the notes it held against plaintiff.

After the testimony was in, plaintiff was granted leave to, and did, amend its petition by interlineation, striking out of the petition and prayer all reference to special damages, and inserting an allegation that plaintiff had rescinded the contract and offered to return the engine. The defendant objected to this amendment on the ground that it changed the suit from one for damages for a breach of contract to one based on a rescinded contract. The further reason was urged that plaintiff did not rescind within a reasonable time, and no tender of the engine had been shown. Thereupon the court announced that the objection would be overruled, in view of the statement of plaintiff's counsel that it was prepared to make proof of the offer to return the engine before the commencement of the suit. And the court further announced to defendant's counsel that "if you desire a continuance by reason of the amendment of this petition, which will admit proof of a rescission of the contract and an offer to return the goods, to some future time in order to prepare to meet that issue, the court will grant it." Thereupon defendant saved an exception, but did not avail itself of the court's offer to continue the case. Nor did defendant file any motion to strike out the amended petition. On the contrary, after the amendment had been made, the defendant requested the court to instruct the jury, that under the pleadings and evidence, the jury should find for the defendant on both the petition and counterclaim. This the court refused to do, and defendant excepted. Thereupon the letter of October 28th, the concluding portion of which is hereinabove quoted, was introduced in evidence by plaintiff. The defendant moved to strike out the letter because the offer to return the engine was not made in a reasonable time. This was overruled.

Defendant then offered in evidence a letter of plaintiff's dated July 26, 1911, saying that Goodrich had that day erected and started the engine and that it was running satisfactorily. It then offered the unpaid notes in evidence, each of which showed on its face that it was given for the purchase price of the engine and contained stipulations that the title to the engine should remain in defendant until note was fully paid. Defendant then offered in evidence the stipulation hereinabove referred to under which the engine had been returned to defendant.

Both sides having rested, defendant asked three instructions, the first of which directed the jury to find for defendant on the petition and the counterclaim, the second directed a verdict for defendant on the petition, and the third directed a verdict for defendant on the counterclaim for $1242 with interest from July 1, 1911, at seven per cent interest. All three of these were refused. Thereupon the jury were instructed, and the respective arguments were made; after which the jury returned a verdict for plaintiff on its petition for $308.15, the amount paid by plaintiff on the engine, and for plaintiff on defendant's counterclaim.

Defendant's appeal is based on two grounds, namely: 1st, That the amendment was not allowable and the court erred in permitting it. 2nd, That under the evidence defendant and not plaintiff was entitled to recover. Undoubtedly it is settled law that where a party, with full knowledge of the fact, has, distinctly and unequivocally, done any act which implies an intention to abide by the contract, he cannot subsequently disaffirm the contract and sue either at law on a rescission or in equity for one. [9 Cyc. 436; Taylor v. Short, 107 Mo. 384; Harms v. Wolf, 114 Mo. App. 387.] And it is also true that where one brings a suit for damages for the breach of a contract, he cannot thereafter bring another to rescind it. This is so

because the two suits are, in their very nature, inconsistent, one being founded on the affirmance and the other on the disaffirmance of the same contract. [Connihan v. Thompson, 111 Mass. l. c. 272; Stuart v. Hayden, 72 Fed. Rep. 412, 169 U. S. 15; Davis v. Schmidt, 106 N. W. Rep. 119.]

But we do not regard the original petition in this case as a decisive act showing an intention on the part of plaintiff to affirm the contract. On the contrary the allegations of the petition and the acts of the plaintiff clearly show that it was at all times insisting upon disaffirming the contract. In other words, the original petition, taken by its four corners, was an inartistic and defective attempt to rescind the contract or to have it rescinded. It contained an allegation in reference to special damages it is true; but, in view of all the other allegations of the petition and the evident purpose of the plaintiff not to stand on the contract, this was nothing more than mere extraneous matter which could be stricken out leaving it a defective petition on a rescinded contract, which would be cured by the insertion of the allegation of tender. It will not do to say that merely because the original petition would have supported a suit for damages, therefore, plaintiff is precluded from a suit on rescission. Because it will not have this effect unless it *decisively* shows *an intention* on the part of plaintiff *to affirm the contract*. In Sanger v. Wood, 3 Johns. 421, it is said: "Any *decisive* act of the party, with knowledge of his rights and of the fact, determines his election in the case of conflicting and inconsistent remedies." And in Connihan v. Thompson, 272 it is said: "Any *decisive* act of affirmance or disaffirmance, if done with knowledge of the facts, determines the legal rights of the parties, once for all. The institution of a suit is such a decisive act, and if its maintenance *necessarily involves an election to affirm* or disaffirm a voidable contract or sale, or to rescind one, it is

generally held to be a conclusive waiver of inconsistent rights, and thus to defeat any action subsequently brought thereon.'' The reason why the institution of a suit for damages for breach of a contract will defeat a subsequent suit to rescind, is because the first suit is a *decisive* act on the part of the plaintiff showing *an intention to affirm* which he cannot afterward recall. But that is not the case with regard to the filing of the original petition in this suit. All the other allegations of the petition, and the evidence offered in support of it, show that plaintiff was not affirming the contract but was disaffirming it. The attachment was levied on the engine as the property of *defendant*. Plaintiff's evidence, before the amendment, showed that the engine was worthless for the purpose for which it was bought and that defendant knew this purpose; that plaintiff wanted defendant to take the engine back and was seeking to recover the money it had paid on it and the remaining notes for the purchase price; and that it had notified defendant it would not pay the notes under the contract. When asked what special damages plaintiff had suffered, the reply was that no account was kept of that, but, if an estimate were to be made, it would perhaps amount to $40. So that, instead of there being a decisive act showing an intention to affirm, the whole trend of the petition and of the evidence was to disaffirm the contract. And the original and amended petitions do not show inconsistent position taken by the plaintiff with reference to its treatment of the contract. Unless they do show this, the mere fact that an extraneous allegation concerning special damages was erroneously inserted in the petition ought not to preclude or bar the plaintiff from its suit on the rescission. The bar in such case is not based on a rule of pleading, but on the principle of law that after one, with full knowledge of the facts, has definitely chosen to stand on a contract in affirm-

ance of it, he cannot thereafter abandon his choice and maintain a suit based on a disaffirmance thereof.

And, unless plaintiff's right to recover is defeated by the above principle of law, the propriety of the amendment cannot now be successfully attacked by the defendant. Because, although it objected to the amendment and saved an exception, yet defendant filed no motion to strike out the amended petition, nor did it stand on any such motion or objection, but attempted to meet the amended petition by offering evidence and otherwise participating in the trial after the amendment. By such action defendant abandoned its right to object. [Grymes v. Mill Co., 111 Mo. App. 358, l. c. 362 and cases cited; Jones v. Traction Co., 137 Mo. App. 408, l. c. 412.] So that if, as a matter of strict technical pleading, there was a departure by reason of the amendment, this is no ground for reversal.

The defendant also contends that plaintiff is not entitled to recover because it did not offer to return the engine within a reasonable time. The evidence, however, shows that plaintiff was induced to try the engine for a while by the representations of defendant. In fact, the contract required that the plaintiff should give notice of any defects in the engine and afford defendant a reasonable opportunity to rectify them. Plaintiff was required to do this before it could rightfully offer to return the engine. Whatever delay there was, was caused by defendant promising to send a man to fix the engine and then not sending him promptly. The day it became certain that the engine could not be made to work plaintiff notified defendant that it must take it back. It had long before this written defendant the engine would not work and that plaintiff cancelled the contract. It had also notified defendant that it would pay no notes because the engine would not work. By the contract, as well as by defendant's promises, plaintiff was justified in asking defendant to make good its engine. The engine was

not used in plaintiff's business after it failed to work. Under these circumstances the rescission was made promptly.

Neither can it be said that plaintiff's tender of the engine was insufficient. Defendant paid the freight to Lee's Summit. It also installed the engine in place. When plaintiff notified them of its intention to return the engine it requested defendant, if they wanted to attend to the taking down of the engine themselves, to send a man for that purpose. It was absolutely necessary for the engine to be installed before it could be inspected and before it could be known that it would work. Hence plaintiff was not required to return the engine to St. Marys, Ohio, and make the tender there. [Phares v. Lumber Co., 118 Mo. App. 555.]

The judgment is affirmed. All concur.