## H. R. McCAW, Appellant, v. WM. F. O'MALLEY.

### Division Two, April 9, 1923.

1. **CONTRACT FOR PURCHASE OF LAND: Rescission: Failure to Perform Obligations: Substitution.** The purchaser of a farm, who by written contract has agreed to execute and deliver a "bankable" note for the balance of the purchase price and to convey to the seller a certain lot, cannot evade those obligations by an oral modification permitting him to supply a note executed by himself and solvent sureties.  The contract was within the Statute of Frauds and required to be in writing, and its terms cannot be eked out by parol, nor modified by oral agreement, and he cannot have the contract rescinded on the sole ground that the seller had failed to perform the contract as orally modified.

2. ———: ———: **Fraud: False Representations: Reliance.**  In a suit to rescind a contract for fraud by false representations, the burden is on him who alleges the fraud to establish by proof that there was not only a false representation, but that he relied on it, and that such reliance was an act of ordinary prudence, and that such representations thus prudently relied upon influenced him to his damage.  Where ordinary care and prudence are sufficient for full protection, it is his duty to make use of them.  Where the purchaser of a farm knows the facts, or may know them by ordinary prudence, he must form his own opinions and act on his own judgment.  And the facts in this case are reviewed, and it is held that the doctrine of *caveat emptor* applies with full force, and that the vendee was not deceived by the representations as to the value of the land made by a jitney-driver, whether or not he was the vendor's agent.

3. ———: ———: **False Representations as to Value.**  Representations as to value do not ordinarily constitute fraud, and particularly so where the vendee of land had unrestricted opportunity to

298 Mo.—26

ascertain the facts for himself, and was in a better position, because of his experience, to know the value of the property than were those who made the representations.

4. ———: ———: **Representations as to Cost.** The mere statement by the vendor of the cost to him of the farm is not to be regarded as a representation upon which the vendee can rely, where the vendee has an unrestricted opportunity and actually undertakes to ascertain its actual value.

5. ———: ———: **Representations as to Quality.** Likewise mere exaggerations as to qualities, such as to the number of acres of bottom land in a farm, do not constitute grounds for an action for deceit on the part of the vendee, and particularly so where they are mere expressions of opinion and both parties have equal opportunities for knowing the fact.

6. ———: ———: **Utilizing Vendor's Ignorance: Clean Hands.** Where the vendee, according to his own testimony, believing that a jitney-driver was working for him, willingly accepted and acted upon the driver's statement that the vendor "didn't know the worth of the land" and that by taking it at a named figure, finally agreed upon, he was getting it at a great bargain, he should not be heard to complain that the vendor falsely represented its value. Being willing to utilize this apparent advantage over the vendor, he does not come into equity with clean hands.

7. ———: ———: **Discovery of Fraud: Acquiescence: Waiver.** The right to rescind a contract on the ground of fraud must be exercised on the discovery of the fraud, and upon such discovery by the defrauded party he is put upon his election to stand upon the contract or rescind it within a reasonable time, and by continuing to treat the contract as valid he waives the fraud. A vendee, who purchases land by written contract, moves upon it and continues to occupy it and while so doing, and after discovering a shortage of acres and the other false representations complained of, offers a note and mortgage for the balance due, cannot have said contract rescinded on the ground of fraud.

Appeal from Phelps Circuit Court.—*Hon. L. B. Woodside,* Judge.

REVERSED AND REMANDED (*with directions*).

*Lorts & Breuer* and *Frank H. Farris* for appellant.

(1) A seller is liable to an action of deceit if he fraudulently represents the quality of the thing sold to

be other than it is, if the buyer has not equal means with the seller of knowing, or if the seller did so in such a manner as to induce the buyer not to make inquiry or investigation, which he would otherwise have done, for his own security. 1 Story's Equity (11 Ed.) pp. 212, 213. The court will not rescind the contract without the clearest proof of the fraudulent misrepresentations, and that they were made under such circumstances as show that the contract was founded upon them. 1 Story's Equity (11 Ed.) p. 213. Courts of equity do not sit for the purpose of relieving parties who refuse to exercise a reasonable diligence of discretion. 1 Story's Equity (11 Ed.) p. 214. (2) The mere puffing or commendation, such as gross exaggeration or departure from truth, while reprehensible in morals, are not treated as frauds which will avoid contracts. In such cases, the other party is bound to exercise his own judgment if the matter is equally open to the observation, examination and skill of both. 1 Story's Equity (11 Ed.) pp. 214, 215. (3) The claim of respondent that appellant was guilty of fraud by statements made as to the quality of the land, as to its being bottom land, and the number of acres of such land upon the farm in question is not fraud. The rule is that misrepresentations as to the quality of ground, to work a rescission of a contract, must be a statement thereof, which is material, not the mere expression of opinion, and the purchaser must rely upon the statement and be deceived, and it must be about things which the purchaser cannot discover by ordinary observation, unless the seller, by artifice, prevented the purchaser from discovering the true facts by means of an inspection. 39 Cyc. 1268; 27 R. C. L. 371; Clinkenbeard v. Weatherman, 157 Mo. 1. c. 112; Judd v. Walker, 215 Mo. 326. (4) Respondent also complains that appellant made statements which were untrue as to the value of the land, and for that reason, the contract should be rescinded. If his contention were sustained by the evidence, it would not be sufficient to cancel his contract. A statement as to the value of the property is generally a matter of opinion, and it is assumed that it is so understood by both

parties to the transaction. 39 Cyc. 1270, 1271; 27 R. C. L. 377; Stonemets v. Head, 248 Mo. 267; Parker v. Moulton, 14 Mass. 99, 19 Am. Rep. 315. O'Malley in looking over and investigating the character and value of the farm by personal visit and examination before purchase, thereby informing himself as to the value and lay of the farm, did not rely on representations of others, but acted on his own independent judgment, and therefore, he cannot have relief because his bargain proves unsatisfactory to him. Younger v. Hoge, 211 Mo. 444; Curran v. Smith, 148 Fed. 945; Kline v. Kennedy, 150 S. W. 998; Sohan v. Gibson, 80 S. W. 1173. In dealing with matters of ordinary life, traders must look out for themselves, and a party may exalt the value of his own property to the highest point his prospective purchaser's credulity will bear, without being guilty of deceit rendering him liable before the law. Cornwall v. McFarland R. E. Co., 150 Mo. 377; Anderson v. McPike, 86 Mo. 293; Black v. Epstein, 93 Mo. App. 459; Chase v. Rusk, 90 Mo. App. 25; Harrison v. Waldon, 89 Mo. App. 164. (5) A charge of fraud cannot be based on a representation by the vendor as to what he paid for the land, or what he had been offered for it, or what the land had sold for, to prior owners. 27 R. C. L. 378; Holbrook v. Connor, 60 Me. 578; Bostick v. Lewis, 2 Am. Dec. 80; Cottrell v. Krum, 18 A. S. R. 557. (6) There was no confidential relationship existing between witness King and the respondent. This claim based upon respondent's unsupported statement, and upon no other reason than mere acquaintanceship, and under no claim of employment by respondent of King, nor an agreement between them that King was to act for him; or even that respondent sought advice and counsel from King. All of the statements testified to by respondent as to the declarations of King upon this issue are positively denied by King, and there is no reason apparent from this record why such relation should exist, or did exist, or why respondent should be believed as against the witness King. 8 Cyc. 564. (7) Retention of the property by the purchaser without objections is an admission on his part that the contract has been performed.

He cannot accept the property under the contract, retain it after full opportunity for examination as to its quality, and afterwards be heard to urge as a defense that the quality is inferior to that represented by the seller: 3 Elliott on Contracts, sec. 2110; Reed v. Randall, 29 N. Y. 538; Steam Heating Co. v. Gas Fixture Co., 60 Mo. App. 153; Famechon v. Devore, 170 S. W. (Mo.) 699; Long v. International Vend. Co., 139 S. W. (Mo.) 819; Cahn v. Reid & Bungardt, 18 Mo. App. 115, 123; Taylor v. Short, 107 Mo. 384, 393; Hart v. Handlin, 43 Mo. 171; Robinson v. Siple, 129 Mo. 208, 222; Athoff v. Transit Co., 204 Mo. 166; Carson v. Smith, 133 Mo. 614; Och v. Railroad, 130 Mo. 27; Estes v. Reynolds, 75 Mo. 565. And it was his duty upon the discovery of the fraud, first to restore what he had received before asking relief in equity. He cannot both eat his apple and keep it. Miller v. Crigler, 83 Mo. App. 401; Parker v. Marquis, 64 Mo. 38; Melton v. Smith, 65 Mo. 315; Robinson v. Siple, 129 Mo. 208. (8) The contract being one for the sale of lands is clearly within the statute of frauds, and being a contract complete on its face, the court should not have permitted defendant to contradict its plain terms by proof of a parole agreement made either prior or subsequent to its execution. Reigart v. Coal & Coke Co., 217 Mo. 166; Ringer v. Holtzclaw, 112 Mo. 523; Boyd v. Paul, 125 Mo. 9; Standard Fireproofing Co. v. St. Louis Fireproofing Co., 177 Mo. 571; Wilson's Assignee v. Beam, 14 S. W. (Ky.) 362. (9) Respondent pleaded and was permitted to offer proof upon a subsequent parole agreement which varied the terms of the written contract. This was clearly error because there was no new, different or other consideration claimed to have passed to appellant in support of such subsequent agreement, and being without consideration was invalid. Macfarland v. Heim, 127 Mo. 327; 13 C. J. 592; Mt. Vernon Car Mfg. Co. v. Milling Co., 227 S. W. (Mo.) 74. (10) Respondent admitted the execution of the contract with appellant. The proof beyond dispute is that he did not comply with it. He was to give a bankable note and not a solvent one. "A good and bankable note, being

such a note as first party will be able to negotiate to the bank for its face value without recourse on said first party.'' ''A bankable note is one receivable as cash by a bank, and a note that banks will not buy is not bankable, regardless of the bank's reasons for refusing to buy, or the high character of the paper.'' 1 Words and Phrases (2 Ser.) 398; Pasha v. Bohart, 122 Pac. 284; 76 Ann. Cas. 1913 .C, 1250. ''Solvency'' is generally understood to mean that a person is able to pay his debts as they mature. The term is used too, in a sense importing that one's property is adequate to satisfy his obligations when sold under execution. Vandeventer v. Goss, 116 Mo. App. 316.

*J. J. Crites, W. D. Jones* and *W. L. Hiett* for respondent.

(1) The owner of property is bound by the representations of his agent as to extent and value and the price paid for the same. Laird v. Keithley, 201 S. W. 1143; Garretzen v. Duenckel, 50 Mo. 104; Chase v. Rusk, 90 App. 28. (2) False representations of the value of land when relied upon by the purchaser, are statements of fact and not expressions of opinion. The purchaser has a right to rely on the same and they are actionable. Vodicka v. Sette, 223 S. W. 578; Stonemets v. Head, 248 Mo. 263; Laird v. Keithley, 201 S. W. 1142; Judd v. Walters, 215 Mo. 323; Cottrill v. Crum, 100 Mo. 403; Davis v. Foreman, 229 Mo. 27; Licher v. Keeney, 98 Mo. App. 394; Thaler v. Niedermeyer, 185 Mo. App. 274; Addis v. Swafford, 180 S. W. 548; Shinnabarger v. Shelton, 41 Mo. App. 158; Ruddy v. Gumby, 180 S. W. 1043; Luchow v. Brewing Co., 183 S. W. 1125. (3) In a purchase of land, the purchaser is not concluded by a visit to the land, but may rely on the statement of the seller as to the market value of the same. The inspection of the property by respondent did not reveal to him the market value of the same. Vodicka v. Sette, 223 S. W. 582; Laird v. Keithley, 201 S. W. 1138; Judd v. Walker, 215 Mo. 312, 323; Stonemets v. Head, 248 Mo. 243, 258; Rabeneau v. Harrell, 213 S. W. 93. (4) The confidential

relations existing between respondent and King gave respondent a right to rely on King's representations. 20 Cyc. 60, 70; 16 Cyc. 176; Stones v. Richmond, 21 Mo. App. 17. (5) The property was tendered to appellant after the discovery of his fraud, by the petition of respondent. Rabeneau v. Harrell, 213 S. W. 93; Burgen v. Boardman, 254 Mo. 257; Davis v. Foreman, 229 Mo. 46; Hays v. Wyant, 202 S. W. 586. Evidence of the fraud before the execution of the contract was properly admitted.

REEVES, C.—Action on contract for sale of real estate.

Plaintiff sued for damages for an alleged breach of said contract, and defendant answered by invoking equity for a rescission, on the grounds of plaintiff's alleged failure to perform and for fraud in its procurement. Defendant prevailed below, and had a decree in accordance with his prayer.

After conventional motions, plaintiff has appealed to this court, averring sundry errors, chief of which is that the judgment or decree is for the wrong party. The contract sued on is as follows:

"It is agreed by and between H. R. McCaw, party of the first part, and William O'Malley, party of the second part, that said first party has sold and second party bought the following described real estate in Phelps County, Missouri, described as the east half of the southwest quarter of section twenty-six, and the east half of north-west quarter of section thirty-five, all in township thirty-seven, range eight west, containing 160 acres, for the price and sum of $12,500 which second party agrees to pay the first party as follows: $500 cash the receipt of which is hereby acknowledged, $3000 to be paid within two weeks from this date, second party further to assume and agree to pay as part of the consideration thereof a deed of trust against said lands for $2500 with accrued interest thereon, the balance of said purchase price to be paid by a good and bankable note given by second party and being such a note as first party will be able

to negotiate to the bank for its face value without recourse on said first party. It is further agreed that second party is to have wagon, wheat drill and corn planted, now on farm without further payment therefor. It is further agreed that possession shall be delivered to second party within two weeks or as soon thereafterwards as legally possible. It is further agreed that first party shall convey to said second party said lands by good and sufficient warranty deed upon compliance by second party with the terms of this contract.

"It is further agreed that second party shall convey to first party by sufficient deed one quarter acre of ground near Piney River heretofore agreed to.

"Witness our hands this 23rd day of March, 1920.

"H. R. McCaw,

"W. F. O'Malley.

"S. N. Lorts, Witness."

The petition alleged the due execution and delivery of said contract and full compliance therewith by appellant, and that according to the terms thereof five hundred dollars was paid at its execution by respondent, and that in lieu of the cash payment of three thousand dollars a bankable note for $3000 was executed by respondent, and delivered to appellant, upon which appellant obtained twenty-seven hundred and sixty dollars, with the agreement that the discount of two hundred and forty dollars should be added to the note to cover the balance, so that the final note contemplated by the contract should be for sixty-seven hundred and forty dollars; that respondent went into possession of said real estate, but has refused to carry out the terms and provisions of said contract by executing and delivering to appellant a bankable note for $6740, for which amount appellant prayed judgment. It was further alleged that respondent had agreed to convey to appellant a small parcel of ground (one-quarter acre) near Piney River, and for his failure so to convey appellant prayed judgment for the further sum of one hundred dollars. Appellant averred that he had tendered deed to said premises, and renewed this tender in his petition.

Respondent's answer admitted the execution and delivery of the contract sued on and the payment of five hundred dollars; the execution and delivery of the three thousand dollar note mentioned in appellant's petition, and admitted that said note having been given in lieu of cash, respondent had agreed to bear the expense of the discount in the sum of $240, and that it had been agreed that said discount, being the equivalent of one year's interest at eight per cent, should be added to the note to cover the balance of the purchase price, making such balance sixty-seven hundred and forty dollars.

For his affirmative defense, respondent said that he had tendered to appellant a note for $6740, representing the balance aforesaid, and had demanded of appellant a deed to said real estate, in accordance with said contract, but that appellant failed, neglected and refused to accept said note in final settlement of the full consideration moving to appellant, and had refused to deliver to respondent a deed to said premises, as required by said contract.

Respondent averred that the conduct of the plaintiff in failing and refusing to accept the note to cover the balance of the purchase price, and his failure to make, execute and deliver to respondent a deed to said premises had prevented the respondent from carrying out his part of the contract, and upon that ground he prayed the court for a rescission.

For another affirmative defense, respondent charged fraud in the purchase and sale of said premises, as follows:

That the respondent was wholly unacquainted with the value of farm lands in Phelps County, Missouri; that one Fred King was the agent of appellant, and that respondent duly informed both King and appellant of his ignorance of farm land values in Phelps County; that he had the utmost confidence in the truthfulness and the integrity of both the appellant and the said Fred King, he having been acquainted with the latter since his boyhood and had also known the appellant for many years; that the appellant and his agent, King, "for the

purpose of inducing the defendant to purchase said farm, represented and stated to the defendant that said farm was well worth the sum of twelve thousand five hundred dollars; that the plaintiff paid for said farm, when he purchased the same, the sum of eleven thousand five hundred dollars; that all the lands enclosed in the fence on said farm belonged to the plaintiff; that said farm had eighty acres of bottom land on it in cultivation; that the said Fred King was not the agent of the plaintiff in the selling of said farm, and was to receive no commission from the plaintiff, in the event the said farm was sold to the defendant; that the said Fred King was acting solely in behalf of the defendant on account of his friendship for the defendant;" that he relied on said statements and believed them to be true, and that he was thereby induced to execute the contract set out in appellant's petition. There were averments of the falsity of each and all of these allegations and a prayer for a rescission of the contract and for judgment against appellant for payments made, and that same should be a lien on the land in suit.

The replication put in issue all the matter set up in respondent's answer.

Upon a trial respondent had a decree for a rescission of the contract, and a further judgment for thirty-two hundred and sixty dollars, representing moneys paid by respondent, with interest at six per cent from the 15th day of April, 1920. In turn the respondent was adjudged to pay for the use of said premises, growing out of his possession, the sum of thirty dollars per month from April 15, 1920, the latter judgment to be credited on the former. The court further adjudged in relation to the mortgage for twenty-five hundred dollars mentioned in the contract, that either the respondent or appellant should have the right to pay off and discharge said obligation, both principal and interest, and that when paid, such payments should stand as a valid lien against said property.

The evidence on the part of respondents showed that respondent at the time he contracted for the purchase of

said farm, resided in Texas County, Missouri, about three miles from the Phelps County line, and that he had lived there for many years; that the farm in controversy was about four miles from Rolla; that Rolla had been used by respondent as his trading point; that he had been in the habit of "going to Rolla once or twice a year and sometimes maybe a dozen times a year;" that the land in suit lay about one-fourth of a mile from the road used by respondent in going to Rolla; that respondent was a farmer and had pursued this occupation practically all his life in Texas County, which county adjoins Phelps County; that he knew the difference between bottom land and hill land, and was familiar with land conditions of Texas County, but said that he was "not familiar with farm values generally in this part."

On the evening of the 22nd of March, 1920, the day before the contract was executed, respondent came to Rolla, where he made inquiries on the evening of that day "from first one and another, where I could buy a little place; a little place was what I wanted, and I run on to a jitney driver, who I had told to find out about this place that Mr. McCaw bought, after he sold my place. . . . The jitney driver directed me to McCaw, said that McCaw had bought a place a few days before that; I met McCaw on the street that night and asked him if he would sell the farm and he said he didn't want to. . . . He told me to come down in the morning; that he would study about it; I went down next morning and asked him if he had made up his mind and he said that he had made up his mind that he wouldn't take less than one hundred dollars an acre, and that there were 160 acres in the tract, 104 in cultivation and 80 acres in the bottom. I said if that was the price of it, I didn't want any $100 an acre land; and that I couldn't pay that; and about that time King took me off to one side and said I can get you the place for less than that, as I helped get the place for McCaw, so we (Fred King and myself) went out and looked at the place. We went from McCaw's in King's car." According to respondent's testimony, he "went up about middle ways on the place on a kind of a

high knoll," and there he inquired of King whether all the land there pointed out to him was McCaw's, and was told that all the land inside of the fence was Mc-Caw's; that on the return trip King urged him to buy the farm; that "it is worth $13,000;" "that McCaw didn't know the worth of the land," and that if respondent lost his opportunity he would lose a bargain. He then testified, "I said that I would go back and look at the place again." Thereafter respondent and King went out to look at another farm, and on their return King said to respondent concerning appellant's farm, "Now, if you get that for $12,500, you had better take it, it is the best bargain in this country," and upon a suggestion from respondent that he did not know the value of the place, as he had not looked it over, King said, "You leave that to me, I am telling you as a friend. I am not working for McCaw, I am working for you." Upon their return to McCaw's place of business at Rolla, respondent said to King, "If you say the place is worth the money, I will take it." Thereupon further negotiations with McCaw were had, resulting in the contract in suit. There was much testimony as to the value of said land, and testimony tending to support the allegations of respondent's answer in the matter of representations.

In the view we shall express on the case, it is unnecessary to set out in detail in this statement further testimony. Such additional facts as may seem pertinent will be noted and discussed in the course of the opinion.

I.   Respondent admits the execution and delivery of the contract sued on, but he does not pretend that he has complied with the terms thereof with respect to the execution and delivery of a "bankable note" for the balance of the purchase price, nor did he tender deed for one-quarter acre on Piney River. He seeks to evade these obligations, imposed by the contract, by the averment that the contract was modified in such way as to permit him to supply a note executed by himself and sureties who were solvent. Under the law, he could not vary the terms of this written con-

Rescission.

tract in that way, and these allegations of his answer should have been stricken out, upon timely motion, and in the absence of such motion, the court should have sustained appellant's objection to testimony tending to show such modification. The contract was to convey real estate, and was within the Statutes of Frauds, and by statute it was required to be in writing, and its terms could not be eked out by parol. [Anderson v. Hall, 273 Mo. 307, 202 S. W. 539.] A contract within the Statute of Frauds cannot be modified by an oral agreement. [Reigart v. Coal Co., 217 Mo. 142, l. c. 166; Warren v. Mayer Mfg. Co., 161 Mo. 112, 61 S. W. 644; McWilliams v. Drainage District, 204 Mo. App. 237, l. c. 252; Ives v. Kimlin, 140 Mo. App. 293, l. c. 302-3, 124 S. W. 23; Walker v. Overland Auto Co., 191 S. W. (Mo. App.) 1061.]

Plaintiff made timely objections to the introduction of testimony tending to vary the terms of said contract, and in this he should have been sustained. This disposes of respondent's contention that there should be a rescission of said contract, because of the failure of plaintiff to perform, as his only complaint in that particular is that plaintiff had refused to carry out the contract, as modified by parol.

II. As a postulate to a discussion of the charge of fraud, we may observe that in an action for false representations, the burden is upon the plaintiff (defendant herein) to establish by proof that there was not only a false representation, but that he relied upon it and that such reliance "was an act of ordinary prudence," and that such representations thus prudently relied upon influenced plaintiff to his damage. [Brown v. Railroad, 187 Mo. App. 104, l. c. 109; Funding & Foundry Co. v. Heskett, 125 Mo. App. 516, l. c. 530-1; Wannell v. Kem, 57 Mo. 478.]

*False Representations.*

It follows from the foregoing that "where ordinary care and prudence are sufficient for full protection, it is the duty of the party to make use of them. Therefore, if false representations are made regarding matters of

fact, and the means of knowledge are at hand and equally available to both parties, and the party, instead of resorting to them, sees fit to trust himself in the hands of one whose interest it is to mislead him, the law, in general, will leave him where he has been placed by his own imprudent confidence.'' [Brown v. Railroad, supra; 1 Cooley on Torts (3 Ed.) 570; Lewis v. Land Co., 124 Mo. 672, l. c. 687; Bradford v. Wright, 145 Mo. App. 623; Davis v. Ins. Co., 81 Mo. App. 266.]

Where the vendee knows the facts, or may know them by the exercise of ordinary prudence, he must form his own opinions and act on his own judgment. [Funding & Fdry. Co. v. Heskett, 125 Mo. App. 516, l. c. 531; McFarland v. Railway, 125 Mo. 253; Bank v. Hunt, 76 Mo. 439; Anderson v. McPike, 86 Mo. 293; Cornwall v. Real Estate Co., 150 Mo. 377.]

Neither law nor equity will afford relief on the grou 1 of false representation to one with equal means of iniormation, who fails to resort to such means. [Hines v. Royce, 127 Mo. App. l. c. 722; Brauchman v. Leighton, 60 Mo. App. 38; Langdon v. Green, 49 Mo. 368; Dunn v. White, 63 Mo. 181; Bragg v. Packing Co., 205 Mo. App. 600.]

In the instant case, respondent was a farmer, residing in an adjoining county. It did not appear from the testimony that the general character of farm lands in the vicinity where respondent resided was different from that in controversy. He approached appellant on the subject of purchasing said land, presumably having made previous inquiries concerning it, and determined in his mind to negotiate for it. Appellant was not then in a mood to sell, but upon another interview evinced a disposition to sell, and named a price which was then objectionable to respondent, indicating some knowledge of values on respondent's part. Without any suggestion from appellant, respondent went with King, a jitney driver, to look over the farm. He saw it, and being a practical farmer was undoubtedly capable of exercising a better judgment as to its value than King, the jitney driver. He did not accept the statement of McCaw as

to its value, but did what any prudent man in the same situation would insist upon doing, went for a personal inspection. He testified that King did not represent him, and that he did not pay King for his services, and yet he complains that King told him that his (King's) interest was only in respondent, and that relying on King's judgment, as to its value, he entered into the contract in question. The doctrine of *caveat emptor* applies with full force and vigor under such circumstances. It is idle for respondent to pretend, under the circumstances, that he was deceived by King, as to his agency.

III. The allegation that respondent was deceived as to the value of the land, is untenable. Representations as to the value do not ordinarily constitute fraud. [Anderson v. McPike, 86 Mo. 293; Union Nat. Bank v. Hunt, 76 Mo. 439; Brownlow v. Wollard, 61 Mo. App. 124; Brown v. Mining Co., 194 Mo. 681, 92 S. W. 699.] And particularly would there be no basis for an action for fraud where the complainant, as in this case, had unrestricted opportunity to ascertain the facts for himself, and where, according to all the facts, he was in a far better position, because of his experience, to know the value of the property, than those who made such representations.

*Value.*

IV. Neither can respondent obtain relief because of any representations made to him regarding the cost of said farm to appellant, for it is fundamental that the mere statement by the vendor of what an article cost him would not be regarded as a matter on which a vendee should rely where, as here, the vendee had an unrestricted opportunity to learn the actual value of the property and where, as here, he actually undertook to ascertain such value. [Fisher v. Seitz, 172 Mo. App. 162, l. c. 171.]

*Cost.*

Moreover, the testimony in this case was too vague and indefinite as to the accuracy of such representations as to cost, even if made.

V. The charge that the acreage in the bottom was misrepresented by appellant, falls within the general principles announced in the foregoing. Mere exaggerations as to qualities do not constitute grounds for action in deceit. [U. S. v. New South Farm & Home Co., 241 U. S. 64; Bunch v. Munger Securities Co., 211 S. W. (Mo. App.) 703.] And particularly is that true where they are mere expressions of opinion and, where parties have equal means of knowledge, so that there is no right to rely upon such representations. [26 C. J. 1201; Langdon v. Green, 49 Mo. 363; Holland v. Anderson, 38 Mo. 55; McFarland v. Carver, 34 Mo. 195; Bryan v. Hitchcock, 43 Mo. 527.] For in all such cases, parties must not neglect to use their own judgment and discretion. [Farmers Savings Bank v. Trust Co., 199 Mo. App. 491, 203 S. W. 674.]

VI. The testimony as to land under fence, pointed out as the property of appellant, and yet belonging to somebody else, was too vague and indefinite to justify relief. There were intimations that there was a parcel of ground not belonging to appellant and yet under his fence, but it appeared that appellant and respondent had agreed that he should have a rebate of $1.00 for every acre, over one and one-half acres, not belonging to appellant, and the matter appears to have ended at that. The testimony would not support a finding on that subject.

VII. According to his own testimony, respondent at a time when he believed that King was working for him, willingly accepted and acted upon King's statement "that McCaw didn't know the worth of the land," and that by taking it at $12,500 he was getting it at a great bargain. He was apparently willing to utilize this apparent advantage over McCaw, and he should not be heard to complain here, as he is within the maxim of equity jurisprudence to the effect that "he who comes into equity must come with clean hands." [Stegmann v. Weeke, 279 Mo. 131, l. c. 139, 214 S. W. 134.]

VIII. For another reason, respondent is not entitled to relief in this case. After the contract of sale was entered into, he moved onto the premises in controversy where he remained at the time the suit was filed and at the time of the trial and, during all of which and particularly prior to the filing of suit, he treated the transaction as a contract. Note the following question and answer:

*Discovery: Waiver.*

"Q. After you had learned of these things that you have testified to about the shortage of land and the other matters that you have complained of, you offered this note and mortgage? A. Yes, sir."

Under such circumstances, he is not entitled to recover, for it is elementary that the right to rescind a contract on the ground of fraud must be exercised on the discovery of the fraud. [Taylor v. Short, 107 Mo. 384; Coal Co. v. Halderman, 254 Mo. 596, l. c. 647, 8 and 9.]

If, moreover, the party deceived treats the transaction as a contract after discovery of the fraud, he waives the fraud by continuing to deal with the property emanating from the fraud. [Taylor v. Short, supra; City Light Co. v. Machine Co., 170 Mo. App. 224, 156 S. W. 83.]

Upon the discovery of a fraud by the defrauded party he is put to his election either to stand upon his contract or to rescind it, and when a party seeks to rescind a contract on the grounds of fraud, he must do so unequivocally and within a reasonable time. [Window Co. v. Cornice Co., 181 Mo. App. 318.]

From the foregoing, it must follow that the judgment of the learned chancellor below was for the wrong party, and as the facts set up in appellant's petition are admitted upon the record he is entitled to judgment against the respondent for the balance of the purchase price, in the sum of sixty-seven hundred and forty dollars.

Relative to the conveyance of one-quarter acre on Piney River as "heretofore agreed to," for which appellant fixes his damages at $100, there was no testi-

mony as to the value thereof and this item must be treated as abandoned by appellant.

It is therefore ordered that the judgment of the chnacellor below be reversed, and the cause remanded with directions to enter judgment in accordance with the prayer of plaintiff's petition, save as to the alleged value of the one-quarter acre on Piney River.

It is so ordered. *Railey* and *Davis, CC.,* concur.

PER CURIAM:—The foregoing opinion by REEVES, C., is adopted as the opinion of the court. All of the judges concur.